## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Civil Case No.:_____

CURTIS J. JACKSON, III p/k/a 50 CENT,                    <u>JURY TRIAL DEMANDED</u>

    Plaintiff,

  v.

ANGELA KOGAN and PERFECTION PLASTIC
SURGERY, INC. d/b/a PERFECTION PLASTIC
SURGERY & MEDSPA,

    Defendants.

_____/

## <u>COMPLAINT</u>

Plaintiff Curtis J. Jackson, III p/k/a 50 Cent ("Plaintiff" or "Jackson"), by and through his undersigned counsel, for his Complaint against Defendants Angela Kogan ("Kogan") and Perfection Plastic Surgery, Inc. d/b/a Perfection Plastic Surgery & MedSpa ("MedSpa") (collectively, "Defendants"), hereby alleges as follows:

## <u>INTRODUCTION</u>

This case is about the abuse of a popular entertainer and businessman's act of goodwill by an unscrupulous business owner for her own economic gain. Under false pretenses, Defendant Angela Kogan took a photograph with Plaintiff Curtis J. Jackson, III (the "Photo") and subsequently used it to promote her business without Jackson's consent. Defendants also falsely implied in several online publications that Jackson was their plastic surgery client. Two years after the Photo was taken, Kogan used it again, this time—shockingly—to support the false insinuation that Defendants had provided a penile enhancement treatment to Mr. Jackson. Jackson *never* had

1

such a sexual enhancement procedure, he has *never* received plastic surgery from Defendants, and he *never* consented to the commercialization and publication of the Photo. Defendants' actions have exposed Jackson to ridicule, caused substantial damage to his professional and personal reputation, and violated his right to control his name and image (which has significant economic value).

**STATEMENT OF THE CASE**

1.      On or about February 1, 2020, Plaintiff Curtis J. Jackson, III—a world-famous celebrity and entrepreneur—graciously agreed to have the Photo taken with someone he thought was a fan. Jackson could not have known at the time that this Photo would repeatedly be exploited as promotional content by, and as a false endorsement for, a well-known aesthetician and business owner in the Miami area, Defendant Angela Kogan, and for Kogan's plastic surgery company, Defendant MedSpa. In the over two years since the Photo was taken, Defendants have used Jackson's image and name for advertising and publicity purposes on Defendants' social media accounts. Jackson never consented to his image, likeness, and name being used in this manner.

2.      Moreover, two and a half years after the Photo was taken, Defendants' misuse of Jackson's image took a significantly more disturbing turn. On August 17, 2022, The Shade Room ("TSR"), a pop-culture media outlet that focuses on the Black community, published an article (the "Article") featuring Kogan discussing the apparent rise in plastic surgery for men, with a specific focus on male sexual enhancement procedures. The Photo Kogan took with Jackson two years prior was used as part of a thumbnail image that appears any time the Article is shared or posted online.

3.      The implication was clear: in the TSR Article, the Photo is juxtaposed with an image of a faceless male obtaining a penile enhancement procedure, with a euphemistic eggplant

emoji covering his exposed groin area (the "Thumbnail Image"). Neither Defendants nor TSR sought Jackson's permission to use the Photo, let alone in this particular manner. Even if Defendants had asked for permission, Jackson *never* would have consented to Kogan or MedSpa's commercial use of the Photo, especially not in this context.

4.      Not only were Jackson's image and name linked to a sexual enhancement treatment he *never had*, but Kogan also falsely implied to the TSR reporter that Jackson was her client for plastic surgery more generally. The Article states that "Angela Kogan… has an extensive clientele of celebrities, including… 50 Cent" in the context of discussing plastic surgery. Kogan and MedSpa were aware that Jackson had never received plastic surgery at MedSpa because, as providers of health care services, they would have no doubt as to whether an individual was treated by them.

5.      To be abundantly clear, Jackson *never* obtained: (a) plastic surgery procedures from Kogan or MedSpa, or (b) the penile enhancement or other procedures described in the Article.

6.      Adding further insult to injury, Defendants repeatedly shared the Article across their various Instagram accounts. In their doing so, the Thumbnail Image was prominently displayed in almost every public post Defendants shared. Additionally, the captions on Defendants' posts contained popular hashtags, as well as company-specific hashtags, which are commonly used to generate greater visibility and reach for the posts and, by extension, the company itself.

7.      Defendants' collective Instagram accounts have nearly *half a million followers*. The Photo has therefore been exposed to the wide audience of Defendants' followers, inevitably leading many of those followers to misconstrue Jackson's image and name as an endorsement of Kogan and MedSpa's business, or as verification that Jackson himself had received the plastic

surgery procedures described in the Article. Indeed, comments made on the various Instagram posts already leave no doubt that consumers have been misled in this manner by Defendants.

8.      From repeatedly re-sharing the Photo prior to August 17, 2022, to resharing the doctored Thumbnail Image on numerous occasions since then, Kogan and MedSpa opportunistically misappropriated Jackson's name and image for their own promotional and commercial advantage. These actions amount to clear violations of the Lanham Act as well as violations of Jackson's right to publicity, specifically, his right not to have his name and image appropriated for commercial exploitation by others without his express consent. Defendants' acts also constitute conversion and unjust enrichment.

9.      As a result of the ongoing invasion of Jackson's publicity and the violation of his rights to control his own image and name (and the substantial economic value of these aspects of Jackson's identity), Plaintiff has suffered, and continues to suffer, irreparable harm for which money damages are inadequate. Therefore, Plaintiff seeks an order enjoining Defendants from: falsely stating that Jackson is their client; sharing or publishing the Photo on social media, electronic media, or any other form of media whatsoever; and engaging in any other actions that would imply that Jackson supports or endorses Kogan and/or MedSpa.

10.     Alternatively, Plaintiff seeks compensatory damages, treble damages under the Lanham Act, punitive damages, disgorgement of any direct and indirect profits earned by Defendants in connection with their use of Jackson's name and image, attorney's fees and costs for Lanham Act violations, and royalties. While Jackson's damages have yet to be determined with particularity, they exceed the jurisdictional amount of $75,000 and likely amount to millions of dollars.

## PARTIES

11.     Plaintiff is a citizen of Texas and resides in Houston, Texas. Jackson is a Grammy-award winning rap artist, investor, entrepreneur, and philanthropist who is commonly known by his stage name 50 Cent. Given his extensive and successful career, Jackson's image, name, and identity have substantial commercial value.

12.     Upon information and belief, Defendant Angela Kogan is a citizen of the State of Florida and resides in Miami-Dade County. According to her public LinkedIn profile, Kogan is the Chief Executive Officer of Perfection Plastic Surgery & Med Spa, located at 16690 Collins Avenue, Suite 702, Sunny Isle Beach, Florida 33160.[1] According to MedSpa's website, Kogan is also a Licensed Aesthetician, Certified Laser Hair Removal Professional, Licensed Phlebotomist, and a Certified Medical Electrologist.[2]

13.     Defendant MedSpa is a Florida domestic corporation with its principal place of business located at 16690 Collins Avenue, Suite 702, Sunny Isle Beach, Florida 33160. According to its website, MedSpa offers a variety of invasive and non-invasive cosmetic procedures.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) (diversity jurisdiction) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and this action is between citizens of different states.

---

[1] Angela Kogan, LINKEDIN, https://www.linkedin.com/in/angela-kogan-649165174 (last visited Aug. 26, 2022).
[2] Perfection MedSpa, *Our Staff*, https://bayharborperfection.com/about-us (last visited Aug. 26, 2022).

15.     This Court also has subject matter jurisdiction over this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26.

16.     This Court has personal jurisdiction over Kogan because Kogan is a Florida resident.  Additionally, this Court has personal jurisdiction over Kogan pursuant to Fla. Stat. 48.193(1)(a)(1) because she operates a business in Florida, and under Fla. Stat 48.193(1)(a)(2) because she committed tortious acts within the state.

17.     This Court has personal jurisdiction over MedSpa because MedSpa is a Florida domestic corporation, and therefore is authorized to do business here and systematically and continuously conducts business here. MedSpa intentionally avails itself of the markets in Florida through its promotion, marketing, and sale of its products and services in this state.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Kogan resides in Miami-Dade County, and because MedSpa's principal place of business is located in Miami-Dade County. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this District. Florida law applies to this action.

## STATEMENT OF FACTS

### Jackson's Status as a World-Famous Artist and Entrepreneur

19.     For over twenty years, Jackson has had a multifaceted, public-facing career as a celebrated and award-winning rap artist, actor, and producer. In addition to his performing and recording career, Jackson is a seasoned businessman and entrepreneur.

20.     Jackson has founded and/or owns many well-known business ventures, including SMS Audio, Sire Spirits, and SK Energy. He has also hosted a music and comedy festival called Tycoon Fest in Houston, Texas for almost a decade.

21.     In addition to these businesses, Jackson has leveraged his background into becoming a prolific television producer. As GQ magazine recently noted, he has sold 25 television shows across nine networks with more shows actively in production. GQ appropriately dubbed him as an "entertainment mogul," having built a "TV empire."[3]

22.     As Jackson is both the strategic mind behind these endeavors and their public face, his name, likeness, and image are integral aspects of his various ventures' brand identity, marketing, and strategic initiatives.

23.     Jackson's name, likeness, and image, therefore, have immense monetary value which is utilized at Jackson's personal and professional discretion.

24.     Jackson also has a large and devoted fan base from his many years in the entertainment industry. Jackson has 41 million followers on his Facebook page, 28.2 million followers on his Instagram account, and 12.5 million Twitter followers.

25.     Because of Jackson's extensive fan base, his various entertainment and business initiatives receive substantial public attention whenever his activities are mentioned in the media—including when third-parties discuss him and his work.

**Angela Kogan and MedSpa**

26.     According to MedSpa's website and Kogan's LinkedIn profile, Kogan is a licensed aesthetician, amongst other professional titles, who serves as the CEO of MedSpa.

---

[3]   Julian Kimble, *How 50 Cent Conquered Television*, GQ (Aug. 25, 2022), https://www.gq.com/story/50-cent-tv-empire-power-ghost-raising-kanan-force-bmf.

27.     Kogan largely showcases MedSpa and her clients on her Instagram account. She also posts photos with celebrity clients.

28.     Kogan has a significant Instagram following, with approximately 114,000 followers. The number of Kogan's followers would cause her to be categorized as a mid-tier influencer on Instagram, meaning that her posts, including photos and videos, make daily "impressions" on hundreds of thousands of followers and even non-followers via Instagram's explore page feature or through others sharing her content.[4]

29.     MedSpa is a multi-office plastic surgery provider and medical spa. MedSpa describes itself as "sweeping out the nation," offering procedures ranging from minimally invasive, such as Botox, to invasive plastic surgeries.[5]

30.     Like Kogan, MedSpa has a large audience on Instagram. The company has at least four distinct Instagram accounts, two of which are specific to MedSpa's Sunny Isles Beach (296,000 followers) and Las Vegas (40,100 followers) locations. As of September, 16, 2022, all four MedSpa accounts have a total of approximately 359,786 followers. This means that MedSpa is also able to make impressions on hundreds of thousands of followers and even reach non-followers on a daily basis.

**Events Prior to August 17, 2022**

31.     On or about February 1, 2020, while on a trip to the Miami area, Jackson happened

---

[4] A social media "impression" is a term of art in the social media marketing industry that means the number of times a social media user's posts, videos, or other forms of content are displayed before an audience, regardless of whether the individual clicked or engaged with the post. Impressions are a useful analytic tool that social media content creators, like Kogan and MedSpa, utilize to assess the success of their posts, to gauge their reach, and to inform future paid or organic marketing campaigns.

[5] *About Us*, PERFECTION MEDSPA, https://bayharborperfection.com/about-us (last visited September 1, 2022).

to be in the proximity of MedSpa.

32.     Recognizing Jackson as a famous performing artist, Kogan asked Jackson if he would take a photograph with her. As a celebrity who is routinely asked to take photos with admiring fans, Jackson consented to Kogan's request for the Photo.

33.     Jackson agreed to having the Photo taken with the understanding that Kogan, like other fans he has encountered over the course of his 20-plus year long career, simply wanted a photograph with Jackson exclusively for her own private enjoyment.

34.     On February 1, 2020, MedSpa, under the Sunny Isle Beach handle[6] "bh_perfection_medspa," posted the Photo to its public Instagram account. Later on February 3, 2020, Kogan, under the handle "angela_mk," also posted a version of the Photo to her public Instagram account.

---

[6] An Instagram "handle" is a social media term of art meaning a user's *unique* username. An Instagram user's handle is distinct from the name associated with their profile, which may be used by multiple users.




35.     MedSpa subsequently reposted the Photo on May 27, 2020, February 22, 2021, and on March 11, 2022.

36.     Another Instagram account affiliated with MedSpa, under the handle "perfection_medspa," posted the Photo on December 14, 2021. Then, on August 2, 2021, yet another affiliated Instagram account, under the handle "perfection_plasticsurgery," posted the Photo.

37.     Defendants posted the Photo at least seven separate times between February 2020 and August 2022 (collectively, the "Original Posts"). Neither on or about February 1, 2020, nor at any time thereafter, did Kogan or MedSpa ask Jackson for permission to use the Photo or his name for any promotional or commercial purpose.

38.     Defendants' use of the Photo for promotional and commercial purposes is evidenced by their use of high-visibility hashtags, self-promoting language, and use of the Photo on official company accounts.

39.     Several of the Original Posts include high-visibility hashtags within the caption, such as #medspa, #celeb, and #miami. Even worse, three of the Original Posts include a #50Cent hashtag, meaning that any Instagram user looking at photos under this hashtag (which is associated specifically with Jackson) could likely find these images. Defendants' use of these hashtags is a deliberate digital marketing and corporate branding choice designed to strengthen their reach to consumers.

40.     Defendants' posts imply without any subtlety that Jackson endorsed MedSpa's business and services. The Original Posts serve as attention-seeking MedSpa advertisements and capitalize on Jackson's fame to do so. Indeed, all of the Original Posts state in the caption that Jackson visited "the number one med spa," promoting their business in the same breath as highlighting that Jackson had been there.

41.     The implication that Jackson himself received plastic surgery from Kogan and MedSpa is even more obvious given that MedSpa has posted photos of other celebrities' who were *not* their clients, such as YouTuber Lele Pons and musician Bandman Kevo, and included a disclaimer in the caption stating "*Not our client*".

 

42. Indeed, a commentator noted on Kogan's February 3, 2020 post that the Photo implied that Jackson was compensated to take the Photo with Kogan as if he were a paid promoter for MedSpa.



43.     Other commentators expressed the misguided belief that Jackson had undergone plastic surgery. Comments on MedSpa's February 1, 2020, March 11, 2020, February 22, 2021 post under the handle "bh_perfection_medspa" include "👀Was he there for a booty butt lift? 😂", "I'm nosey, what he get?", "Did he Get Lipo?", and "He be getting work done." Defendants did nothing to set the record straight and clarify the implication of their posts. Indeed, in response to comments on the February 22, 2021 post, MedSpa replied with mere emojis.



44.     Jackson never would have consented to Kogan taking a photograph with him had he been informed that Kogan and MedSpa would use the Photo or his name for promotional or commercial purposes. Even if Defendants offered Jackson compensation to use the Photo, he *never* would have promoted Kogan or MedSpa or licensed his image, likeness, or name to them.

45.     In addition to posting the Photo on Defendants' social media, Kogan falsely implied in an article published by the blog DANIEL+LAUREN on May 7, 2022 that Jackson was

Defendants' plastic surgery client.[7] Kogan made similarly misleading statements and again shared the Photo for an article published by the blog The Libra Lounge on August 15, 2022.[8]





---

[7] *Angela Kogan Celebrates 10 Years of PERFECTION*, DANIEL+LAUREN (May 7, 2022), https://danielpluslauren.com/2022/05/07/angela-kogan-celebrates-10-years-of-perfection/.

[7] *The Face Behind the Face of Perfection*, EBBY MAGAZINE, https://www.ebbymagazine.com/the-face-behind-the-face-of-perfection/ (last visited Sept. 1, 2022);

[8] *Angela Kogan: The Magic Behind the FAB Faces of Bay Harbour Perfection*, THE LIBRA LOUNGE (Aug. 15, 2022), https://thelibralounge.blog/2022/08/15/angela-kogan-bay-harbour-perfection/.

46.     Kogan also shared the Photo with Ebby Magazine for their article covering Kogan and her business.[9]



47.     The Original Posts and Kogan's false statements about Jackson being Defendants' plastic surgery client amount to a violation of Jackson's right to publicity because his image and name were knowingly used *without Jackson's consent* for the commercial and promotional benefit of Kogan and MedSpa.

**The Shade Room Publishes the Article with the Photo, Giving Rise to the False Implication That Jackson Received Sexual Enhancement Surgery from Defendants**

48.     On August 17, 2022, The Shade Room, a popular news and celebrity gossip media outlet centered on the Black community, published an exclusive article titled "Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On It."[10] Immediately following a statement that "[m]ore men are getting plastic surgery

---

[9] *The Face Behind the Face of Perfection*, EBBY MAGAZINE, https://www.ebbymagazine.com/the-face-behind-the-face-of-perfection/ (last visited Sept. 1, 2022).

[10] Matthew McNulty, *Penis Enhancements Are More Popular Than Ever & BBLs are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On It (Exclusive)*, THE SHADE ROOM (Aug. 17, 2022), https://theshaderoom.com/plastic-surgery-trends-bbl-angela-kogan-exclusive/.

(down there) than ever before," TSR reporter Matthew McNulty quoted Kogan as saying that she "has an extensive clientele of celebrities, including… 50 Cent."

49.     On or around August 17, 2022, TSR tweeted a link to the Article on Twitter. The Thumbnail Image used for the article, which was in plain view in the tweet TSR published,[11] consists of a doctored version of the Photo juxtaposed with a close-up shot of a medical provider presumably performing a penile enhancement procedure on a patient whose face is not visible and whose genitals are obscured by an eggplant emoji. The juxtaposition of the Photo featuring Jackson and Kogan with the picture of the procedure to create the single Thumbnail Image dramatically reinforces the false impression that Jackson had received this sexual enhancement treatment from Defendants.

---

[11] Upon information and belief, TSR first published the Thumbnail Image incorporating Jackson's Photo juxtaposed with that of the patient with the eggplant emoji covering his groin, but later replaced that image with a photo solely of Kogan and the eggplant patient. Although TSR may have made this change, this did not dynamically update the image when it was screengrabbed by Kogan and/or MedSpa, or when it was subsequently reshared on their social medial profiles. In other words, Kogan and or MedSpa continued to disseminate the offensive image of Jackson even after TSR attempted to cover up the misuse of the Jackson Photo.



50. The Article itself reads as a long-form ad for Defendants rather than bona fide journalism. The Article is focused almost exclusively on Kogan and her practice at MedSpa. It prominently states that Defendants have numerous celebrity clients but with a specific emphasis on Jackson (whose Photo appears twice despite the fact that he has *never* received plastic surgery from Defendants), and showcases Kogan as the sole interviewee. The reporter quotes her as stating: "At the moment we are seeing a major shift in men getting plastic surgery. Men have really stepped up and are getting way more surgery than we think." This statement is followed immediately by the Photo of Jackson with Kogan.

  

51.     Upon information and belief, the TSR Article was a promotional exercise engineered by Kogan's talent agent and former patient, Carissa Rossi ("Rossi"), who introduced Kogan to representatives of TSR for the purpose of promoting Defendants' business. According to her Instagram bio, Rossi "[c]onnect[s] talent and companies with partnerships that are true to their personal brand." Kogan thanked TSR and Rossi in the caption of her August 17, 2022 Instagram post.

52.     The fact that the Article is a promotional piece rather than journalism is reinforced by the fact that Defendants' own Instagram posts, rather than images such as stock photos, are displayed throughout the body of the Article. A person reading the Article has the ability to click the Instagram links in the Article to be brought directly to MedSpa's various Instagram accounts. The Instagram posts throughout the Article also show the full captions associated with each post.

These captions include MedSpa's phone number, statements entreating the viewer to call for a free consultation, and offers of promotional discounts on cosmetic surgeries and procedures. The use of Defendants' Instagram posts throughout further establish that the Article itself serves a commercial and advertising purpose for Defendants.

53. Additionally, the article concludes with one last promotional push: "Those interested in a consult with Dr. Kogan, the 'first and only plastic surgery in Sunny Isles,' can do so by filling out a form here."[12]

54. After the Article was published, on August 17, 2022, Kogan posted a video to her public Instagram account that scrolled through the Article. The video begins with a lingering still shot of the Thumbnail Image. The Thumbnail Image, as the first graphic that appears in the video, is the image that is visible from the grid view of Kogan's profile.[13]

55. As she did previously with the Original Posts, Kogan included several high visibility hashtags in her post captions, such as #plasticsurgery, #theshaderoom, #celebrity, and #penis, clearly with the intention of gaining traction for the post and, by extension, for Kogan and her business.

56. On the same day, MedSpa acted in lockstep with Kogan, posting the same video with a substantially similar caption, which included even more hashtags than Kogan had in her post.

---

[12] The word "here" is hyperlinked to this form: https://form.jotform.com/221035080660141

[13] By using the Thumbnail Image as the primary asset on their posts after August 17, 2022, Defendants are intentionally directing viewers to read the Article. Thumbnail images are often hyperlinked to the article in question, sending the viewer directly to the article in question. At a minimum, if a thumbnail image is not hyperlinked, the viewer is indirectly encouraged to seek out the article.

57.     As of September 16, 2022, Kogan and MedSpa's Instagram posts showing the Thumbnail Image incorporating the Jackson Photo are still live on their profiles.

**Reception to Kogan and MedSpa's Resharing the Article
Featuring Jackson's Photo and the Thumbnail Image**

58.     Since Defendants began repeatedly posting the Thumbnail Image to their social media accounts, Jackson has been subjected to lewd, lascivious, and sexually objectifying comments from members of the public who wrongly believed that Jackson had undergone a penile enhancement procedure and that he endorsed Defendants. Additionally, other media outlets and publications have subsequently reshared the contents of the original TSR Article and the Photo.

59.     As the result of Defendants' misappropriation of Jackson's name and image, commentators on Defendants' posts have amplified the impression that Jackson endorsed Defendants and that he himself had undergone a penile enhancement procedure. On MedSpa's August 17, 2022 post under the handle "bh_perfection_medspa," one commentator crudely posted "Call him 50 inch 😂." On the same post, another commentator posted "@50cent Can I see the before and after pics?" Similar comments can be found on Kogan's August 17, 2022 post, such as: "Did 50 see this I don't think he gone like that 😂", "Wait so 50 got his 😮 done or what?", "Why they got 50 cent up there talking bout 🍆 enlargement 😂", "@_cuban_link what work did @50cent get?? @angela_mk".[14, 15] Given that these posts are still live and publicly available, they can continue to mislead consumers and bring Jackson's name into disrepute.

---

[14] The @ symbol before an Instagram user's handle creates a direct hyperlink to that specific user's account. Using the @ symbol to generate this hyperlink to an individual's account is referred to as "tagging." Additionally, depending on a user's personalized settings, the person being tagged will typically receive a notification that they were tagged in a comment.
[15] The Instagram handle "_cuban_link" belongs to Jamira Haines, a/k/a Cuban Link, who is Jackson's girlfriend. The Instagram handle "50cent" belongs to Jackson.

60.     Kogan and MedSpa, when sharing Jackson's image in association with a sexual enhancement procedure, should have known that this could lead to vulgar and sexually charged comments about Jackson and his body, particularly in light of the ways that Black men in U.S. history have been, and continue to be, sexualized and fetishized. These attitudes and stereotypes are extremely apparent when reading the comments on Kogan and MedSpa's posts.

61.     Additionally, several other pop culture outlets have published substantially similar articles as TSR's article, including the Photo and the false assertion that Jackson is one of Kogan's plastic surgery patients.[16]

62.     Kogan's talent agent Rossi also posted the Thumbnail Image and another post about the Article to her professional Instagram account under the handle "crossientertainment."

63.     Defendants' self-promotion through the use of Jackson's name and image, as well as amplifying the false insinuation to media outlets that Jackson is a plastic surgery client, amounts to an egregious violation Jackson's right to publicity, false endorsement, false advertising, conversion, and unjust enrichment. Defendants did so to benefit themselves financially and in the face of their audience at the expense of Jackson's reputation and dignity.

---

[16] Zack Zwiezen, *According to Med Spa CEO, more men are finding work (below)*, The Hiu (Aug. 18, 2022), https://thehiu.com/according-to-med-spa-ceo-more-men-are-finding-work-below/; *Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On it (Exclusive)*, NEWS WWC (August 18, 2022), https://www.newswwc.com/entertainment/celebrity-news/penis-enhancements-are-more-popular-than-ever-bbls-are-dying-out-cosmetic-surgery-ceo-angela-kogan-speaks-on-it-exclusive/; *Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On it (Exclusive)*, Star News (Aug. 18, 2022), https://www.starsnews.co/19956773/penis-enhancements-are-more-popular-than-ever-amp-bbls-are-dying-out-cosmetic-surgery-ceo-angela-kogan-speaks-on-it-exclusive#/.

**COUNT I**
**(RIGHT OF PUBLICITY – UNAUTHORIZED MISAPPROPRIATION OF NAME/LIKENESS PURSUANT TO FLA. STAT. § 540.08 AGAINST ALL DEFENDANTS)**

64.      Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 above as if fully set forth herein.

65.      On or around February 1, 2020, Jackson agreed to take a photograph with Kogan under the sole impression that Kogan was a fan seeking the photograph for her private and personal enjoyment.

66.      Between February 1, 2020 through August 17, 2022, Kogan and MedSpa shared the Photo to their social media accounts on numerous occasions for purposes of advertising and self-promotion.

67.      Additionally, Kogan falsely implied in multiple online publications that Jackson was her client for plastic surgery procedures and/or shared the Photo with publications writing about Defendants' business.

68.      Kogan also misappropriated Jackson's image and name when she falsely implied in the TSR article that Jackson received plastic surgery procedures (including penile enhancement) from Defendants, when she permitted TSR's use and publication of the Photo, and when she and MedSpa repeatedly shared the doctored Thumbnail Image incorporating the Photo on their social media accounts.

69.      These posts have fueled the misconception that Jackson endorses Defendants' business, that Jackson was or is Defendants' client for plastic surgery procedures, and that Jackson obtained a penile enhancement procedure from Defendants. Defendants knew that Jackson never

received plastic surgery from Defendants, yet they proceeded to imply to TSR and other media outlets that he had.

70.     Jackson has received no payment, royalties, or any other economic or social benefit from Defendants' use of his name or image.

71.     At no time did Jackson ever consent to Defendants' use of the Photo in an any type of advertising or promotional manner. Defendants have been the sole beneficiaries of misappropriating Jackson's name and image.

72.     Defendants' actions have caused Jackson reputational harm and have subjected him to lewd, invasive, and objectifying public commentary, and have stripped Jackson of his right to control when, how, and to whom he permits his name and image to be utilized.

73.     As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, irreparable harm for which monetary damages will be inadequate and thus is entitled to appropriate injunctive relief.

74.     Alternatively, Plaintiff has suffered, and continues to suffer, substantial damages from the loss of his right to publicity, and, accordingly, Plaintiff is entitled to damages in an amount to be determined at trial.

## COUNT II
### (COMMON LAW INVASION OF PRIVACY AGAINST ALL DEFENDANTS)

75.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 above as if fully set forth herein.

76.     On or around February 1, 2020, Jackson agreed to take a photograph with Kogan under the sole impression that Kogan was a fan seeking the photograph for her private and personal enjoyment.

77.     Between February 1, 2020 through August 17, 2022, Kogan and MedSpa shared the Photo to their social media accounts on numerous occasions for purposes of advertising and self-promotion.

78.     Additionally, Kogan falsely implied in multiple online publications that Jackson was her client for plastic surgery procedures and/or shared the Photo with publications writing about Defendants' business.

79.     Kogan also misappropriated Jackson's image and name when she falsely implied in the TSR article that Jackson received plastic surgery procedures (including penile enhancement) from Defendants, when she permitted TSR's use and publication of the Photo, and when she and MedSpa repeatedly shared the doctored Thumbnail Image incorporating the Photo on their social media accounts.

80.     These posts have fueled the misconception that Jackson endorses Defendants' business, that Jackson was or is Defendants' plastic surgery client, and that Jackson obtained a penile enhancement procedure from Defendants. Defendants knew that Jackson never received plastic surgery from Defendants, yet they proceeded to imply to TSR and other media outlets that he had.

81.     Jackson has received no payment, royalties, or any other economic or social benefit from Defendants' use of his name or image.

82.     At no time did Jackson ever consent to Defendants' use of the Photo in an any type of advertising or promotional manner. Defendants have been the sole beneficiaries of misappropriating Jackson's name and image.

83.     Defendants' actions have caused Jackson reputational harm and have subjected him to lewd, invasive, and objectifying public commentary, and have stripped Jackson of his right to control when, how, and to whom he permits his name and image to be utilized.

84.     As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer irreparable harm for which monetary damages will be inadequate and thus is entitled to appropriate injunctive relief.

85.     Alternatively, Plaintiff has suffered, and continues to suffer, substantial damages from the invasion of his right to privacy, and, accordingly, Plaintiff is entitled to damages in an amount to be determined at trial.

## COUNT III
### (VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a): FALSE ENDORSEMENT AGAINST ALL DEFENDANTS)

86.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 63 above as if fully set forth herein.

87.     Defendants have misleadingly used Jackson's name and image in violation of the Lanham Act, 15. U.S.C. § 1125(a) to create and establish the false impression that Jackson endorsed, approved, or sponsored Defendants' business in an effort to generate revenue for Defendants' company and/or to give themselves an overall commercial benefit.

88.     Defendants did so on countless occasions, including: when they repeatedly posted the Photo of Jackson on social media; when Kogan falsely implied in several online publications that Jackson was Defendants' plastic surgery client and/or shared the Photo with such publications; when Defendants misappropriated Jackson's name and image for use in the TSR article; and when they shared on social media the Article, the Thumbnail Image, and a screenshot repeating the false insinuation that Jackson was a client for plastic surgery and penile enhancement treatment.

89.     Jackson never consented to his name and image being used in any way to endorse or sponsor Kogan, MedSpa, and/or Defendants' goods and services.

90.     Jackson never signed a contract or made an oral agreement to endorse or sponsor Defendants, and therefore Defendants were aware that Jackson had made no formal or informal endorsement, sponsorship, or approval of Defendants and their business.

91.     Defendants' actions have already and continue to deceive consumers into the belief that Jackson was a plastic surgery patient and endorsed, approved, and/or sponsored Defendants' goods and services.

92.     Kogan, as the owner and an officer of MedSpa, participated in the decision to engage in infringing acts or caused the infringement to occur because she had the Photo taken, she caused or permitted MedSpa to use the Photo on its social media accounts, she supplied the Photo to the various online publications, and she herself made statements to the TSR reporter implying that Jackson was Defendants' client for plastic surgery and penile enhancement procedures.

93.     Defendants' actions have caused irreparable harm to Jackson's reputation and brand by falsely claiming that Jackson endorsed, approved of, or sponsored Defendants and their business, and specifically that he endorsed their plastic surgery or penile enhancement procedures as a result of having been Defendants' client for such procedures. No monetary relief will adequately compensate Plaintiff for such irreparable harm and thus he is entitled to appropriate injunctive relief.

94.     Alternatively, as a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from Defendants' false endorsement and, accordingly, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, statutory trebling of damages, disgorgement of profits earned directly or indirectly by Defendants'

unlawful endorsement, attorneys' fees and costs, the destruction of the false endorsements, and/or any other relief that is just and proper.

<u>COUNT IV</u>
**(VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a): FALSE ADVERTISING AGAINST ALL DEFENDANTS)**

95.     Plaintiff repeats and realleges each and every allegation contained in paragraph 1 through 63 above as if fully set forth herein.

96.     Defendants' actions described herein constitute false advertisement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.*

97.     Defendants misleadingly used Jackson's name and image, without Jackson's consent, to create the false perception that Jackson was a plastic surgery client of Defendants and that Jackson endorsed their business.

98.     Defendants used Plaintiff's name and image to establish a false endorsement of their company on countless occasions, including: when they repeatedly posted the Photo of Jackson on social media; when Kogan falsely implied in several online publications that Jackson was Defendants' plastic surgery client and/or shared the Photo with such publications; when Defendants misappropriated Jackson's name and image for use in the TSR article; and when they shared on social media the Article, the Thumbnail Image, and a screenshot repeating the false insinuation that Jackson was a client for plastic surgery and penile enhancement treatment.

99.     Defendants' actions have already deceived and continue to deceive consumers into the belief that Jackson himself received plastic surgery and sexual enhancement procedures from Defendants.

100.     Defendants were aware that their insinuation that Jackson was a plastic surgery patient was false because they as health care providers are in the position to know who has and has

not received their services based on their records and other forms of documentation. In doing so, they used Jackson's name, image, and likeness as false advertising for their business.

101.   Defendants have used Jackson's name and image in interstate commerce by posting advertising social media content that is accessible to anyone across the country, and because MedSpa has locations both in Las Vegas and in Florida.

102.   Defendants' use of Jackson's name and image is used to attract consumers to obtains goods and services from Kogan and MedSpa, which has a direct and indirect effect on their revenue.

103.   Defendants' actions have caused irreparable harm to Jackson's reputation and brand by associating him with Defendants, Defendants' line of business in the plastic surgery industry, and with specifically having had sexual enhancement procedures. No monetary relief will adequately compensate Plaintiff for such irreparable harm and thus he is entitled to appropriate injunctive relief.

104.   Alternatively, as a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from Defendants' false advertising and, accordingly, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, statutory trebling of damages, disgorgement of profits earned directly or indirectly by Defendants' unlawful false advertising, attorneys' fees and costs, the destruction of the false advertisements, and/or any relief that is just and proper.

## COUNT V
### (CONVERSION AGAINST ALL DEFENDANTS)

105.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 above as if fully set forth herein.

106.    Jackson is, and at all relevant times was, the exclusive owner of all rights, title, and interest to his image, likeness, and/or identity. Jackson has an intangible property interest in his name, image, and likeness.

107.    Defendants converted Jackson's property rights over his name and image when they used said intangible property for their own advertising and financial gain without Jackson's consent.

108.    As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from Defendants' conversion of his property rights, and, accordingly, Plaintiff is entitled to all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Defendants' unlawful proceeds, and/or other relief deemed just and proper.

**COUNT VI**
**(UNJUST ENRICHMENT AGAINST ALL DEFENDANTS)**

109.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 63 above as if fully set forth herein.

110.    Jackson's name, image, and likeness bear substantial monetary value.

111.    Defendants were and continue to be aware that Jackson's name and image bear substantial monetary value, and that the use of his name and image for their own goods and services could lead to a financial and commercial benefit for themselves.

112.    Jackson conferred a benefit upon Defendants by voluntarily taking the Photo with Kogan. Jackson was unaware that this Photo would be used as advertising to the commercial benefit of Defendants. Jackson never consented to Defendants' use of the Photo in this capacity.

113.     Defendants used Jackson's name and image to obtain a financial and commercial benefit when they shared the Photo repeatedly on social media and when they falsely insinuated that Jackson was a plastic surgery patient.

114.     Defendants have retained profits and other benefits conferred upon them by using Jackson's image and name to promote and advertise Defendants' business.

115.     It would be inequitable for Defendants to retain the benefits conferred upon them by using Jackson's image and name without paying fair value for the image.

116.     As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from Defendants' unjust enrichment at Plaintiff's expense, and, accordingly, Plaintiff is entitled to all remedies available under the common law claim for unjust enrichment, including but not limited to actual damages, costs, interest, restitution of unlawful proceeds, and/or other relief deemed just and proper.

## DEFENDANTS' CONDUCT WARRANTS PUNITIVE DAMAGES

117.     Defendants' conduct warrants the imposition of punitive damages. The factors justifying punitive damages include, at a minimum, the following:

a.      Defendants knew that they did not have Jackson's permission to use his name and image;

b.      Defendants' disregard for Jackson's right to publicity and to use his name and image as he chooses was intentional, wanton, and malicious.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Curtis J. Jackson, III respectfully requests that the Court enter an order and judgment in favor of him against Defendants Angela Kogan and Perfection Plastic Surgery, Inc, containing the following relief:

a. Preliminarily and permanently enjoining Defendants from falsely stating that Jackson is their client, sharing the Photo of Jackson with Kogan in connection with any and all plastic surgery and sexual enhancement procedures, sharing the Photo of Jackson with Kogan on any and all social media profiles and with any and all media outlets, and engaging in any further actions that could allow a reasonable person to construe Jackson as endorsing, partnering with, or supporting Kogan and MedSpa;

b. Awarding Plaintiff damages, in an amount to be proven at trial, to compensate him for harm to the commercial value of his image and name, for loss of royalties, and professional and personal reputational harm;

c. Awarding Plaintiff treble damages for Defendants' violations of the Lanham Act, based on trebling of actual damages in an amount to be proven at trial;

d. Awarding Plaintiff punitive and exemplary damages, in an amount to be proven at trial;

e. Awarding Plaintiff reasonable attorneys' fees and costs under the Lanham Act;

f. Awarding Plaintiff interest in any amount according to law;

g. Any and all remedies available under 15 U.S.C. § 1125, including: disgorgement of any profits made by Defendants, directly or indirectly, arising from the unauthorized use of Jackson's name and image; compensatory damages in an amount to be determined at trial; and the destruction of all copies in any media of the infringing images; and

h. Granting Plaintiff such and other further relief at law or in equity as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Curtis J. Jackson, III hereby

demands a trial by jury in this action on all claims so triable.

Dated:  September 16, 2022                    Respectfully submitted,

**AKERMAN LLP**

*/s Joseph L. Rebak*
Joseph Rebak, Esq.
Florida Bar No. 308668
Alejandro J. Paz, Esq.
Florida Bar No. 1011728

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
 Miami, Florida 33131
(305) 374-5600 Telephone
(305) 374-5095 Facsimile
joseph.rebak@akerman.com
wendy.gonzalez@akerman.com
alejandro.paz@akerman.com
marylin.herrera@akerman.com

*Attorneys for Plaintiff Curtis Jackson, III p/k/a
50 Cent*