United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Curtis J. Jackson, III a/k/a 50 CENT, Plaintiff, <br><br>v.<br><br>Angela Kogan and Perfection Plastic Surgery, Inc. d/b/a Perfection Plastic Surgery & Medspa, Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Civil Action No. 22-22972-Civ-Scola <br> ) <br> ) <br> ) <br> ) |

**Order Denying Dismissal**

This matter is before the Court on the motion to dismiss filed by Defendants Angela Kogan and Perfection Plastic Surgery, Inc. (**Mot., ECF No. 16**.) Having carefully considered the briefing and relevant legal authorities, the Court **denies** the motion for the reasons below.

1. **Background**

Plaintiff Curtis J. Jackson III, popularly known as 50 CENT, is a world-famous artist and businessman. (Compl. ¶ 19, ECF No. 1.) His decades-long career has rendered him a following of 41 million users on Facebook, 28.2 million on Instagram, and 12.5 million on Twitter. (Compl. ¶ 24.)

Defendant Perfection Plastic Surgery & MedSpa ("MedSpa") is operated by Defendant Angela Kogan. (Compl. ¶ 26.) MedSpa offers plastic surgery and minimally invasive procedures such as Botox treatments. (Compl. ¶ 29.) It operates in Sunny Isles Beach and Las Vegas, and has nearly 360,000 Instagram followers. (Compl. ¶ 30.) Kogan herself has 114,000. (Compl. ¶ 28.)

On or about February 1, 2020, Jackson "happened to be in the proximity" of MedSpa's location in Sunny Isles Beach. (Compl. ¶ 31.) At Kogan's request, Jackson posed for, and took, a picture with Kogan in front of a backdrop stamped with the words "PERFECTION MED SPA" throughout. (Compl. ¶¶ 32 – 34.) Jackson believed that Kogan "simply wanted a photograph with [him] exclusively for her own private enjoyment." (Compl. ¶ 33.) But later that day, MedSpa uploaded the photo to one of its public Instagram accounts. (Compl. ¶ 34.) The photo's caption reads "Thank you @50cent for stopping by the number one med spa @bh_perfection_medspa [ ] [ ] #50cent #bhperfectionmedspa #perfectionmedspa #medspa #celeb #vip #facial #laser." (Compl. 10.) Kogan posted a version of that same photo on to her public

Instagram account two days later. (Compl. ¶ 34.) Her caption reads the same but adds "#power" after "#laser."

MedSpa repeatedly posted the photo on its accounts afterward, including on May 27, 2020, February 22, 2021, August 2, 2021, December 14, 2021, and March 11, 2022. (Compl. ¶¶ 35-36.) Kogan also shared the photo for articles published by a magazine and an online blog. (Compl. ¶¶ 45-46.) At no relevant point did MedSpa or Kogan ask Jackson for permission to use the photo or his name for a commercial purpose. (Compl. ¶ 37.)

On August 17, 2022, a celebrity gossip media outlet known as The Shade Room ("TSR") published an article titled "Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On It." (Compl. ¶ 48.) The article was the result of the efforts of Kogan's talent agent, Carissa Rossi, who introduced Kogan to TSR representatives. (Compl. ¶ 51.)

TSR posted a link to the article on its Twitter account that same day. (Compl. ¶ 49.) On Twitter, the link's thumbnail image was composed of two side-by-side images: on the left was Kogan's photo with Jackson, and on the right was a "close-up shot of a medical provider presumably performing a penile enhancement procedure on a patient whose face is not visible and whose genitals are obscured by an eggplant emoji." (Compl. ¶ 49.) Also on that day, Kogan posted a screen capture video scrolling through the TSR article on her Instagram account. (Compl. ¶ 54.)

The video begins with a shot of the Tweet itself, which reads: "More men are getting surgery (down there) than ever before, and BBLs are fading away! The CEO of the leading med spa for celebrities in South Florida dishes on the latest surgery trends with The Shade Room." (Compl. 18.) Immediately below is the thumbnail image described above, which links to the TSR article. (*Id.*)

Next, the video clicks into the article and scrolls through it. Visible in the video is a portion of the article that quotes Kogan as saying, "At the moment we are seeing a major shift in men getting plastic surgery . . . [m]en have really stepped up and are getting more surgery than we think." (Compl. 18.) And directly beneath that quote is Kogan's photo with Jackson. (*Id.*) The article includes MedSpa's phone number, statements entreating readers to call for a free consultation, and offers of promotional discounts on cosmetic surgeries and procedures. (Compl. ¶ 52.) The article closes with the following: "Those interested in a consult with Dr. Kogan, the 'first and only plastic surgery in Sunny Isles,' can do so by filling out a form here." (Compl. ¶ 53.)

Kogan's caption for the video, as posted on her Instagram account, includes hashtags such as #plasticsurgery, #theshaderoom, #celebrity, and #penis. (Compl. ¶ 55.) MedSpa also posted the video on Instagram with a

substantially similar caption. (Compl. ¶ 56.) Users responded to the video with crude commentary such as "@50cent Can I see the before and after pics?", "Call him 50 inch [ ]", and "Why they got 50 cent up there talking bout [ ] enlargement[.]" (Compl. ¶ 59.)

Jackson brings this action alleging the Defendants' unauthorized use of his likeness for their commercial gain. He says these posts falsely suggest that he received penile enhancement surgery from MedSpa at the expense of his reputation and dignity. The Defendants respond by moving for dismissal under Federal Rule of Civil Procedure 12(b)(6).

## 2. Legal Standard

When considering a motion to dismiss under Rule 12(b)(6), the Court must accept all of the complaint's allegations as true, construing them in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). A pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). The Plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *See Twombly*, 550 U.S. at 555. "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

Yet, where the allegations "possess enough heft" to suggest a plausible entitlement to relief, the case may proceed. *See Twombly*, 550 U.S. at 557. "[T]he standard simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of the required element." *Rivell v. Private Health Care Sys., Inc.*, 520 F.3d 1308, 1309 (11th Cir. 2008) (cleaned up). "And, of course, a well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (cleaned up).

### 3. Analysis

Jackson asserts the following claims against both Defendants: (1) unauthorized misappropriation of his likeness under Fla. Stat. § 540.08; (2) invasion of privacy; (3) false endorsement under 15 U.S.C. § 1125(a); (4) false advertising under the same statute; (5) conversion; and (6) unjust enrichment. The Defendants seek dismissal of all counts.

### A. Unauthorized Misappropriation Under Fla. Stat. § 540.08 (Count I)

Florida law prohibits the unauthorized publication of a person's name or likeness for a commercial or advertising purpose. The relevant statute reads:

> "No person shall publish, print, display or otherwise publicly use for purposes of trade or for any commercial or advertising purpose the name, portrait, photograph, or other likeness of any natural person without the express written or oral consent to such use . . ."

Fla. Stat. § 540.08(1). Throughout the complaint, Jackson says he never consented to having his photo with Kogan used for advertising or promotional uses. This would ostensibly include the actual publication of the photo on the Defendants' Instagram accounts, its use in the TSR article (which article Jackson says Kogan's agent orchestrated), and its use in the screen capture video of the TSR article and related Tweet. (*See* Compl. ¶¶ 66-67.)

Yet, the Defendants' motion focuses on the posting of the photo to the Defendants' Instagram accounts alone. (*See* Mot. 6-7.) They weakly argue that Jackson consented to the photo's being uploaded on to Instagram while making no mention of Jackson's consent/non-consent as to the screen capture video and the promotional value it doubtlessly served.[1]

That omission is fatal. Both the Tweet and the article, which appear in the video posted by the Defendants, indisputably place Kogan's photo with Jackson next to images and text that promote penile enhancement surgery and the Defendants' business. (*See* Compl. ¶¶ 52, 53.) Because the Defendants took it upon themselves to post the video onto their Instagram accounts, Jackson can plausibly argue that the Defendants unauthorizedly used his likeness to promote their business regardless of whether the Defendants had any role in

---

[1] The Defendants also rely on *Valentine v. C.B.S. Inc.*, 698 F.2d 430 (11th Cir. 1983) to argue that the photo serves no promotional purpose. The Court disagrees and addresses the photo's promotional value below at Section 3.C(I) (False Endorsement) of this Opinion.

TSR's publication of either the Tweet or the article. That conclusion makes sense because: (1) the Defendants' video served as their own promotion of TSR's content to their Instagram followers, and (2) the Defendants do not argue that Jackson consented to their re-publications of TSR's content.

But even if Jackson's misappropriation claim were limited to the Defendants' posting of the photo to Instagram alone, the question of Jackson's consent is a factual issue that the Court must construe in his favor at this juncture. So, despite the Defendants' repeated assertions that Jackson at least implicitly consented to having his photo used on Instagram in exchange for "free medspa services," the Court is bound to follow—at least for now—Jackson's side of the story, which is that he only consented to Kogan's private use of the photo. For these reasons, Count I survives.

### B. Invasion of Privacy (Count II)

"In Florida, the common law tort of invasion of privacy [covers] four distinct claims: (1) appropriation—the unauthorized use of a person's name or likeness to obtain some benefit; (2) intrusion—physically or electronically intruding into one's private quarters; (3) public disclosure of private facts—the dissemination of truthful private information which a reasonable person would find objectionable; and (4) false light in the public eye—publication of facts which place a person in a false light even though the facts themselves may not be defamatory." *Clark v. Procter & Gamble Co.*, No. 07-22892-CIV, 2009 WL 10668971, at *2 (S.D. Fla. Jan. 30, 2009) (Hoeveler, J.) (cleaned up).

Taken in the light most favorable to him, Jackson's allegations support misappropriation and false light theories, at minimum. The Defendants, however, only address the former. (*See* Compl. ¶¶ 77-80.) Their failure to consider the false light theory is, again, alone a sufficient basis upon which to deny their motion. But putting that fact aside, "[t]he elements of common law invasion of privacy for commercial misappropriation of likeness are the same as the elements of unauthorized publication of a likeness under § 540.08." *Id.*  So, the Defendants merely repeat their above consent argument in respect of misappropriation. (*See* Mot. 16.) And for the same reasons the Court cites above, that argument fails here. Count II survives.

### C. Lanham Act Claims

Next, the Defendants also fail at challenging Jackson's Lanham Act claims. The Lanham Act assesses civil liability upon:

> "[a]ny person who, in connection with any goods or services, or any container for goods, uses in commerce any . . . false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation . . . of such person with another person, or as to the origin, sponsorship, or approval of his or her goods or services, or commercial activities by another person, or
>
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities[.]"

15 U.S.C. § 1125(a)(1). As noted, Jackson asserts claims for false endorsement (Count III) and false advertising (Count IV). False endorsement claims arise under Section 1125(a)(1)(A) whereas false advertising claims arise under Section 1125(a)(1)(B). *See Edmonson v. Velvet Lifestyles, LLC*, No. 15-24442-CIV, 2016 WL 11783348, at *3 (S.D. Fla. Dec. 2, 2016) (Lenard, J.).

### (1) *False Endorsement (Count III)*

A "plaintiff alleging false endorsement of goods must show a likelihood of consumer confusion, mistake, or deception as to the origin, sponsorship, or approval of goods being sold." *Webster v. Dean Guitars*, 955 F.3d 1270, 1278 (11th Cir. 2020). Jackson's allegations—particularly those concerning the video—sufficiently do so.

This is made evident by a comment to one of the Defendants' first posts of Kogan's photo in which an Instagram user deduces that Jackson was the Defendants' paid promoter. (Compl. ¶ 42.) Even more clear are the crude comments connecting Jackson to Defendants' penile enhancement services, which followed the Defendants' video publication. Again, Instagram users publicly responded with comments like "@50cent Can I see the before and after pics?", "Call him 50 inch [ ]", and "Why they got 50 cent up there talking bout [ ] enlargement[.]" (Compl. ¶ 59.)

Yet, the Defendants' challenge against Jackson's false endorsement count turns on the fact that courts in the Eleventh Circuit treat false endorsement claims as ones for trademark infringement. *See, e.g., Edmonson*, 2016 WL 11783348 at *3 (quoting *Univ. of Ala. Bd. Of Trs. V. New Life Art, Inc.*, 683 F.3d 1266, 1278 (11th Cir. 2012) ("we have never treated false endorsement and trademark infringement claims as distinct under the Lanham Act.")). And to prevail on a trademark infringement claim, a plaintiff must

show, "(1) that it had trademark rights in the mark or name at issue and (2) that the other party had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Tana v. Dantanna's*, 611 F.3d 767, 773 (11th Cir. 2010).

Approaching Jackson's claim on a technicality, the Defendants cite *Lancaster v. Bottle Club, LLC* for the proposition that "a person's image or likeness cannot function as a trademark." No. 8:17-CV-634-T-33JSS, 2017 WL 3008434, at *6 (M.D. Fla. July 14, 2017). (*See* Mot. 9.) However, in doing so, they misrepresent the actual holding in *Lancaster*. That case involved professional model plaintiffs who sued operators of a swingers' club for unauthorizedly using their images in advertisements. The models, like Jackson, asserted claims for false endorsement. In summarizing the parties' positions on a motion to dismiss, the *Lancaster* court said: "Defendants rely on *ETW Corp v. Jierh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003) for the proposition that, 'as a general rule, a person's image or likeness cannot function as a trademark.'" *Lancaster*, 2017 WL 3008434 at *6. It is *this* portion of the opinion that the Defendants present to this Court as the basis of their argument above.

Yet, nowhere did the *Lancaster* court make that holding. (*See* Mot. 9.) In fact, the *Lancaster* court actually rejected that argument for a reason this Court finds applicable here. In sustaining the models' claims for false endorsement, the *Lancaster* court said: "But, unlike the plaintiff in *ETW Corp.*, Plaintiffs are not asserting they have trademark rights in every image of themselves; rather, as a basis for their false endorsement claims, Plaintiffs point to *specific photographs Defendants used without permission and which allegedly confused viewers about Plaintiffs' association* with EYZ Wide Shut." 2017 WL 3008434 at *6 (emphasis added). The same is true of Jackson. And aside from their failed reliance on *Lancaster*, the Defendants present no convincing argument as to why Jackson cannot be said to have trademark rights in the use of the photo, his likeness, or name.

Instead, they further try to undermine the false endorsement claim by offering two theories as to why no "implied endorsement" exists. (Mot. 9-10.)

*First*, the Defendants assert that because Kogan's photo does not show Jackson's "name or image in the promotion of any of Defendants' products or services (as the caption simply thanks Plaintiff for visiting Defendants' office)," no endorsement exists. (*See* Mot. 9.)

That is simply wrong. As the proverbial saying goes, a picture is worth a thousand words. This one in particular depicts a worldwide celebrity next to Kogan with MedSpa's name repeated all throughout the background. The promotional value is evident. Elsewhere in their motion, the Defendants cite *Valentine v. C.B.S. Inc.*, 698 F.2d 430 (11th Cir. 1983) for the premise that

Jackson's mere inclusion in the photo does not constitute "direct" promotion. (Mot. 6.) However, the facts of *Valentine* are fully distinguishable. That case involved the song "Hurricane" by Bob Dylan, in which he depicts the murder trial of prizefighter Rubin "Hurricane" Carter. The song mentions a witness in the trial, Patty Valentine, who later sued him on, among others, an unauthorized misappropriation claim under Florida Statutes Section 540.08. The Eleventh Circuit affirmed summary judgment against Valentine because it found that mere inclusion of her name in the song did not establish a promotional purpose. *See Valentine*, 698 F.2d at 433. Here, however, Jackson cannot be said to "merely" be present in the photo. Its import—and arguably the reason why Defendants repeatedly published it—derives from the very fact that he is in it.

Even more, the photo's caption also directly promotes the Defendants' business. It does more than just thank Jackson. It says "Thank you @50cent for stopping by the number one med spa @bh_perfection_medspa [ ] [ ] #50cent #bhperfectionmedspa #perfectionmedspa #medspa #celeb #vip #facial #laser." Read in the light most favorable to Jackson, the Defendants' "thanks" serves as a humblebrag.[2] It *is* self-promotion. But even if the Court afforded the "thanks" portion of the caption no promotional value, the remainder clearly promotes the Defendants by referring to MedSpa as "the number one med spa" and associating it with a "#celeb" and "#vip." This argument fails.

*Second*, the Defendants say, "because the [p]hoto does not . . . contain any statements that may be attributed to Plaintiff as endorsing Defendants' plastic surgery services or penile enhancement surgery, there can be no implied endorsement." (Mot. 10.) But again, the photo is not the only object at issue. The video is also at play. And by Jackson's allegations, so is the TSR article itself, insofar as Kogan or her agent procured its publication. Both the video and the article surround the photo of Jackson with images and text that promote penile enhancement surgery and the Defendants' business. An implied endorsement is, at minimum, reasonably deducible such that the Defendants' second argument must fail. Jackson's false endorsement claim survives.

### (2) *False Advertising (Count IV)*

To state a claim for false advertising, a plaintiff must allege that: "(1) the advertisements of the opposing party were false or misleading; (2) the

---

[2] A "humblebrag" refers to "a seemingly modest, self-critical, or casual statement or reference that is meant to draw attention to one's admirable or impressive qualities or achievements." *Humblebrag*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/humblebrag.

advertisements deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce; and (5) the [plaintiff] has been—or is likely to be—injured as a result of the false advertising." *Edmonson*, 2016 WL 11783348 at *7 (citing *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004)).

The Defendants argue that Jackson fails on this claim because nothing about the photo or their sharing of it was false or misleading. (*See* Mot. 11.) They present this argument on three grounds. First, they say, neither the photo nor their sharing of it implied that Jackson received penile enhancement surgery from them or otherwise contained false or misleading statements. (*Id.*) Second, the Defendants assert that they never shared the photo with any online publication for the purpose of suggesting that Jackson received such services from them. (*Id.*) Last, they say that Jackson agreed to the taking and use of the photo in exchange for "free medspa services." (*Id.*)

The Defendants' first argument fails by reason of the Court's above findings concerning the Defendants' use of the video. The second is irrelevant because nothing about Section 1125(a)(1)(B)'s text places any legal value on the Defendants' subjective intent. And the third fails because, at this juncture, the Court is required to accept as true Jackson's representation that he "never would have consented to Kogan taking a photograph with him had he been informed that Kogan and MedSpa would use the [p]hoto or his name for promotional or commercial purposes." (Compl. ¶ 44.)

Jackson's claim for false advertising survives.

### D. Conversion (Count V)

Next, it "is well settled that a conversion is an unauthorized act which deprives another of his property permanently or for an indefinite time." *Souza v. Nowhere Bottle & Soc. Club, Inc.*, No. 19-24692-CIV, 2020 WL 13420543, at *5 (S.D. Fla. Feb. 27, 2020) (Altonaga, J.) This and other courts in the Eleventh Circuit have recognized conversion claims in the context of intangible property rights. *See, e.g., id.*; *Taylor v. Trapeze Mgmt., LLC*, 0:17-CV-62262-KMM, 2018 WL 9708619, at *9 (S.D. Fla. Mar. 26, 2018) (Moore, J.); *Krupa v. Platinum Plus*, LLC, 8:16-CV-3189-T-33MAP, 2017 WL 1050222, at *8 (M.D. Fla. Mar. 20, 2017).

According to the Defendants, Jackson is "unable to allege that [they] wrongfully asserted dominion over [his] name and image," because he consented to their taking and sharing of the photo. (*See* Mot. 12) But, as noted, Jackson alleges that he only consented to the taking and the use of the photo

for Kogan's private use. Jackson says he would have never consented to the photo had he known it would be used promotionally. (*See* Compl. ¶ 44.) At this stage, the Court must credit his allegation over the Defendants' assertion that Jackson—at least tacitly—consented to the photo's being used in exchange for "medspa services." (Mot. 12.) Thus, Jackson's conversion claim must survive.

### E. Unjust Enrichment (Count VI)

Last, "[t]here are three elements of an unjust enrichment claim under Florida law: first, the plaintiff has conferred a benefit on the defendant; second, the defendant voluntarily accepted and retained that benefit; and, finally, the circumstances are such that it would be inequitable for the defendants to retain the benefit without paying for it." *Dolan v. JetBlue Airways Corp.*, 385 F. Supp. 3d 1338, 1351 (S.D. Fla. 2019) (Scola, J.) (citing *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1287 (11th Cir. 2015)). The Defendants say that Jackson fails to state an unjust enrichment claim under the last element because he "received value in exchange for the [p]hoto—namely, free medspa services[.]" (Mot. 12.)

Yet, to restate the obvious: this case is about much more than the Defendants' posting of Kogan's photo onto Instagram. The crux of Jackson's claims—including his count for unjust enrichment—stems from the photo's use in the Defendants' video and TSR article, which associate him with penile enhancement surgery. So, the question is not whether Jackson received adequate value in exchange for the photo. It is whether he received adequate value in exchange for the Defendants' use of his image—including in the video.

Even assuming that the scope of Jackson's unjust enrichment claim was limited to the Defendants' posting of Kogan's photo, the Court would find that Jackson *does* sufficiently allege inequitable circumstances. Again, Jackson is adamant that he did not consent to having the photo's being used in a promotional manner. (Compl. ¶¶ 112.) Further, the promotional value that the Defendants have received from repeatedly sharing Kogan's photo with Jackson is surely great. Although the Court has no reason to doubt the quality of the "free medspa services" that the Defendants provided Jackson, the record is not sufficiently established to substantiate the Defendants' suggestion that their services equitably compensated Jackson.

Accordingly, Jackson's claim for unjust enrichment stands.

### 4. Conclusion

For these reasons, the Court **denies** the Defendants' motion to dismiss in its totality. (**ECF No. 16**). All of Jackson's claims remain viable. The parties will

continue to observe the deadlines set forth in the Court's Scheduling Order (ECF No. 24), and are reminded that they may, at any time, file a motion requesting a settlement conference before United States Magistrate Judge Jonathan Goodman.

**Done and ordered** in Miami, Florida, on December 12, 2022.

_____
Robert N. Scola, Jr.
United States District Judge