**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Civil Case No.: 1:22-cv-22972-RNS/GOODMAN

CURTIS J. JACKSON, III p/k/a 50 CENT,                    <u>JURY TRIAL DEMANDED</u>

    Plaintiff,

  v.

ANGELA KOGAN, PERFECTION PLASTIC
SURGERY, INC. d/b/a PERFECTION PLASTIC
SURGERY & MEDSPA, and THE SHADE
ROOM, LLC d/b/a THE SHADE ROOM,

    Defendants.

_____/

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff Curtis J. Jackson, III p/k/a 50 Cent ("Plaintiff" or "Jackson"), by and through his

undersigned counsel, for his First Amended Complaint against Defendants Angela Kogan

("Kogan"), Perfection Plastic Surgery, Inc. d/b/a Perfection Plastic Surgery & MedSpa

("MedSpa"), and The Shade Room, LLC d/b/a The Shade Room ("TSR" or "The Shade Room"),

(collectively, "Defendants"), hereby alleges as follows:

## <u>INTRODUCTION</u>

This case is about the abuse of a popular entertainer and businessman's act of goodwill by

an unscrupulous business owner for her own economic gain and by a gossip tabloid intent on

driving clicks and ad revenue at the expense of the truth. Under false pretenses, Defendant Angela

Kogan took a photograph with Plaintiff Curtis J. Jackson, III (the "Photo") and subsequently used

it to promote her business without Jackson's consent. Kogan and MedSpa also falsely implied in

several online publications that Jackson was their plastic surgery client. Two years after the Photo

was taken, the Photo was shockingly utilized in an article in the gossip publication The Shade Room to support the false insinuation that Kogan or MedSpa had provided a penile enhancement treatment to Jackson. Jackson *never* had such a sexual enhancement procedure, he has *never* received plastic surgery from Kogan or MedSpa, and he *never* consented to the commercialization and publication of the Photo. Although Kogan and MedSpa participated in creating the article, they have insisted that the use of Jackson's photo and the false insinuation that Jackson had surgical procedures was solely the work of The Shade Room. Defendants' actions have exposed Jackson to ridicule, caused substantial damage to his professional and personal reputation, and violated his right to control his name and image (which has significant economic value).

## STATEMENT OF THE CASE

1.      On or about February 1, 2020, Plaintiff Curtis J. Jackson, III—a world-famous celebrity and entrepreneur—graciously agreed to have the Photo taken with someone he thought was a fan. Jackson could not have known at the time that this Photo would repeatedly be exploited as promotional content by, and as a false endorsement for, a well-known aesthetician and business owner in the Miami area, Defendant Angela Kogan, and for Kogan's plastic surgery company, Defendant MedSpa. In the over two years since the Photo was taken, Kogan and MedSpa have used Jackson's image and name for advertising and publicity purposes on their social media accounts. Jackson never consented to his image, likeness, and name being used in this manner.

2.      Moreover, two and a half years after the Photo was taken, Kogan and MedSpa's misuse of Jackson's image took a significantly more disturbing turn. On August 17, 2022, TSR, a pop-culture media outlet that focuses on the Black community, published an article (the "Article") featuring Kogan discussing the apparent rise in plastic surgery for men, with a specific focus on

2

male sexual enhancement procedures. The Photo Kogan took with Jackson two years prior was used as part of a thumbnail image that appears any time the Article is shared or posted online.

3. The implication was clear: in the TSR Article, the Photo is juxtaposed with an image of a faceless male obtaining a penile enhancement procedure, with a euphemistic eggplant emoji covering his exposed groin area (the "Thumbnail Image"). None of the Defendants sought Jackson's permission to use the Photo, let alone in this particular manner. Even if any of the Defendants had asked for permission, Jackson *never* would have consented to any of their commercial use of the Photo, especially not in this context.

4. Not only were Jackson's image and name linked to a sexual enhancement treatment he *never had*, but Kogan also falsely implied to the TSR reporter that Jackson was her client for plastic surgery more generally. The Article states that "Angela Kogan… has an extensive clientele of celebrities, including… 50 Cent" in the context of discussing plastic surgery. Kogan and MedSpa were aware that Jackson had never received plastic surgery at MedSpa because, as providers of healthcare services, they would have no doubt as to whether an individual was treated by them.

5. To be abundantly clear, Jackson *never* obtained: (a) plastic surgery procedures from Kogan or MedSpa, or (b) the penile enhancement or other procedures described in the Article.

6. Adding further insult to injury, Kogan, MedSpa, and TSR repeatedly shared the Article across their various Instagram and social media accounts. In their doing so, the Thumbnail Image was prominently displayed in almost every public post they shared. Additionally, the captions on Kogan and MedSpa's posts contained popular hashtags, as well as company-specific hashtags, which are commonly used to generate greater visibility and reach for the posts and, by extension, the company itself.

7.      TSR's Instagram account alone has nearly ***thirty million*** followers, and Kogan and MedSpa's collective Instagram accounts have nearly half a million followers. The The Photo has therefore been exposed to the wide audience of Defendants' followers, inevitably leading many of those followers to misconstrue Jackson's image and name as an endorsement of Kogan and MedSpa's business, or as verification that Jackson himself had received the plastic surgery procedures described in the Article. Indeed, comments made on the various Instagram and other social media posts already leave no doubt that consumers have been misled in this manner by Defendants.

8.      From repeatedly re-sharing the Photo prior to August 17, 2022, to resharing the doctored Thumbnail Image on numerous occasions since then, Kogan and MedSpa opportunistically misappropriated Jackson's name and image for their own promotional and commercial advantage. These actions amount to clear violations of the Lanham Act as well as violations of Jackson's right to publicity, specifically, his right not to have his name and image appropriated for commercial exploitation by others without his express consent. Kogan and MedSpa's acts also constitute conversion and unjust enrichment.

9.      By publishing the Article and falsely stating or implying that Jackson had received plastic surgery procedures from Kogan or MedSpa, or the penile enhancement or other procedures described in the Article, TSR committed a clear act of defamation. The Article was particularly egregious because TSR believed it was publishing Jackson's private medical information which is not newsworthy or a subject of public interest. Kogan and MedSpa now claim that The Shade Room unilaterally took and used the Photo of Jackson for the Article without Kogan or MedSpa's permission.

10.     As a result of the ongoing invasion of Jackson's publicity and the violation of his rights to control his own image and name (and the substantial economic value of these aspects of Jackson's identity), Plaintiff has suffered, and continues to suffer, irreparable harm for which money damages are inadequate. Therefore, Plaintiff seeks an order enjoining Kogan and MedSpa from: falsely stating that Jackson is their client; sharing or publishing the Photo on social media, electronic media, or any other form of media whatsoever; and engaging in any other actions that would imply that Jackson supports or endorses Kogan and/or MedSpa.

11.     Alternatively, Plaintiff seeks from Kogan and MedSpa compensatory damages, treble damages under the Lanham Act, punitive damages, disgorgement of any direct and indirect profits earned by Kogan and MedSpa in connection with their use of Jackson's name and image, attorney's fees and costs for Lanham Act violations, and royalties.

12.     Plaintiff separately seeks compensatory damages, as well as injunctive relief, a retraction, and an apology from TSR.

13.     While Jackson's damages have yet to be determined with particularity, they exceed the jurisdictional amount of $75,000 and likely amount to millions of dollars.

## PARTIES

14.     Plaintiff is a citizen of Texas and resides in Houston, Texas. Jackson is a Grammy-award winning rap artist, investor, entrepreneur, and philanthropist who is commonly known by his stage name 50 Cent. Given his extensive and successful career, Jackson's image, name, and identity have substantial commercial value.

15.     Upon information and belief, Defendant Angela Kogan is a citizen of the State of Florida and resides in Miami-Dade County. According to her public LinkedIn profile, Kogan is the Chief Executive Officer of Perfection Plastic Surgery & Med Spa, located at 16690 Collins

Avenue, Suite 702, Sunny Isle Beach, Florida 33160.[1] According to MedSpa's website, Kogan is also a Licensed Aesthetician, Certified Laser Hair Removal Professional, Licensed Phlebotomist, and a Certified Medical Electrologist.[2]

16.     Defendant MedSpa is a Florida domestic corporation with its principal place of business currently located at 16690 Collins Avenue, Suite 702, Sunny Isle Beach, Florida 33160. According to its website, MedSpa offers a variety of invasive and non-invasive cosmetic procedures. Upon information and belief, MedSpa is owned by non-party Iris Kogan, and employs physicians including non-party Drs. Pierre S. Gordon, Victoria Karlinsky-Bellini, Carol Kim Le, and Christian Luis Quintero. Upon information and belief Defendant Angela Kogan is the managing employee and office manager of MedSpa.

17.     Defendant The Shade Room, LLC d/b/a The Shade Room is a California limited liability company which lists its business address with the California Secretary of State as 1880 Century Park East, Suite 950, Los Angeles, California 90067. TSR engages in substantial activity within Florida, including intentionally availing itself of the markets in the state through its promotion and marketing of its products or services in this state. Upon information and belief, TSR's principal member is Angelica Nwandu, who, on information and belief, is a California resident. TSR is a media company specializing in celebrity news and gossip.

---

[1] Angela Kogan, LINKEDIN, https://www.linkedin.com/in/angela-kogan-649165174 (last visited Jan. 16, 2023).
[2] Perfection MedSpa, *Our Staff*, https://bayharborperfection.com/about-us (last visited Jan. 16, 2023).

## JURISDICTION AND VENUE

18.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a)(1) (diversity jurisdiction) because the amount in controversy exceeds the sum or value

of $75,000, exclusive of interest and costs, and this action is between citizens of different states.

19.     This Court also has subject matter jurisdiction over this action pursuant to Section

39 of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 4 and 16 of the Clayton Act, 15 U.S.C.

§§ 15(a) and 26.

20.     This Court has personal jurisdiction over Kogan because Kogan is a Florida

resident. Additionally, this Court has personal jurisdiction over Kogan pursuant to Fla. Stat.

48.193(1)(a)(1) because she operates a business in Florida, and under Fla. Stat 48.193(1)(a)(2)

because she committed tortious acts within the state.

21.     This Court has personal jurisdiction over MedSpa because MedSpa is a Florida

domestic corporation, and therefore is authorized to do business here and systematically and

continuously conducts business here. MedSpa intentionally avails itself of the markets in Florida

through its promotion, marketing, and sale of its products and services in this state.

22.     This Court has personal jurisdiction over TSR because TSR committed a tortious

act within this state, falsely reported on activities purported to have taken place within this state,

and has engaged in substantial activity within this state, including intentionally availing itself of

the markets in Florida through its promotion and marketing of its products or services in this state.

Further, this Court has personal jurisdiction over TSR because the Article was published to TSR's

website and social media and was accessible within—and was actually accessed from—the State

of Florida.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Kogan resides in Miami-Dade County, and because MedSpa's principal place of business is located in Miami-Dade County. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this claim occurred in this District, including publication and viewing of the Article. Florida law applies to this action.

## STATEMENT OF FACTS

### Jackson's Status as a World-Famous Artist and Entrepreneur

24.     For over twenty years, Jackson has had a multifaceted, public-facing career as a celebrated and award-winning rap artist, actor, and producer. In addition to his performing and recording career, Jackson is a seasoned businessman and entrepreneur.

25.     Jackson has founded and/or owns many well-known business ventures, including SMS Audio, Sire Spirits, and SK Energy. He has also hosted a music and comedy festival called Tycoon Fest in Houston, Texas for almost a decade.

26.     In addition to these businesses, Jackson has leveraged his background into becoming a prolific television producer. As GQ magazine recently noted, he has sold 25 television shows across nine networks with more shows actively in production. GQ appropriately dubbed him as an "entertainment mogul," having built a "TV empire."[3]

27.     As Jackson is both the strategic mind behind these endeavors and their public face, his name, likeness, and image are integral aspects of his various ventures' brand identity, marketing, and strategic initiatives.

---

[3]   Julian Kimble, *How 50 Cent Conquered Television*, GQ (Aug. 25, 2022), https://www.gq.com/story/50-cent-tv-empire-power-ghost-raising-kanan-force-bmf.

28.     Jackson's name, likeness, and image, therefore, have immense monetary value which is utilized at Jackson's personal and professional discretion.

29.     Jackson also has a large and devoted fan base from his many years in the entertainment industry. Jackson has 41 million followers on his Facebook page, 28.6 million followers on his Instagram account, and 12.7 million Twitter followers.

30.     Because of Jackson's extensive fan base, his various entertainment and business initiatives receive substantial public attention whenever his activities are mentioned in the media—including when third-parties discuss him and his work.

**Angela Kogan and MedSpa**

31.     According to MedSpa's website and Kogan's LinkedIn profile, Kogan is a licensed aesthetician, amongst other professional titles, who serves as the CEO of MedSpa.

32.     Kogan largely showcases MedSpa and her clients on her Instagram account. She also posts photos with celebrity clients.

33.     Kogan has a significant Instagram following, with approximately 141,000 followers. The number of Kogan's followers would cause her to be categorized as a mid-tier influencer on Instagram, meaning that her posts, including photos and videos, make daily "impressions" on hundreds of thousands of followers and even non-followers via Instagram's explore page feature or through others sharing her content.[4]

---

[4] A social media "impression" is a term of art in the social media marketing industry that means the number of times a social media user's posts, videos, or other forms of content are displayed before an audience, regardless of whether the individual clicked or engaged with the post. Impressions are a useful analytic tool that social media content creators, like Kogan and MedSpa, utilize to assess the success of their posts, to gauge their reach, and to inform future paid or organic marketing campaigns.

34.     MedSpa is a multi-office plastic surgery provider and medical spa. MedSpa describes itself as "sweeping out the nation," offering procedures ranging from minimally invasive, such as laser hair removal, to invasive plastic surgeries.[5]

35.      Like Kogan, MedSpa has a large audience on Instagram. The company has at least four distinct Instagram accounts, two of which are specific to MedSpa's Sunny Isles Beach (306,000 followers) and Las Vegas (41,800 followers) locations. As of January 16, 2023, all four MedSpa accounts have a total of more than 370,000 followers. This means that MedSpa is also able to make impressions on hundreds of thousands of followers and even reach non-followers on a daily basis.

**Events Prior to August 17, 2022**

36.     On or about February 1, 2020, while on a trip to the Miami area, Jackson happened to be in the proximity of MedSpa.

37.     Recognizing Jackson as a famous performing artist, Kogan asked Jackson if he would take a photograph with her. As a celebrity who is routinely asked to take photos with admiring fans, Jackson consented to Kogan's request for the Photo.

38.     Jackson agreed to having the Photo taken with the understanding that Kogan, like other fans he has encountered over the course of his 20-plus year long career, simply wanted a photograph with Jackson exclusively for her own private enjoyment.

39.     On February 1, 2020, MedSpa, under the Sunny Isle Beach handle[6] "bh_perfection_medspa," posted the Photo to its public Instagram account. Later on February 3,

---

[5] *About Us*, PERFECTION MEDSPA, https://bayharborperfection.com/about-us (last visited Jan. 16, 2023).
[6] An Instagram "handle" is a social media term of art meaning a user's *unique* username. An Instagram user's handle is distinct from the name associated with their profile, which may be used by multiple users.

2020, Kogan, under the handle "angela_mk," also posted a version of the Photo to her public Instagram account.

 

40.    MedSpa subsequently reposted the Photo on May 27, 2020, February 22, 2021, and on March 11, 2022.

41.    Another Instagram account affiliated with MedSpa, under the handle "perfection_medspa," posted the Photo on December 14, 2021. Then, on August 2, 2021, yet another affiliated Instagram account, under the handle "perfection_plasticsurgery," posted the Photo.

42.    Kogan and MedSpa posted the Photo at least seven separate times between February 2020 and August 2022 (collectively, the "Original Posts"). Neither on or about February 1, 2020, nor at any time thereafter, did Kogan or MedSpa ask Jackson for permission to use the Photo or his name for any promotional or commercial purpose.

43.     Kogan and MedSpa's use of the Photo for promotional and commercial purposes is evidenced by their use of high-visibility hashtags, self-promoting language, and use of the Photo on official company accounts.

44.     Several of the Original Posts include high-visibility hashtags within the caption, such as #medspa, #celeb, and #miami. Even worse, three of the Original Posts include a #50Cent hashtag, meaning that any Instagram user looking at photos under this hashtag (which is associated specifically with Jackson) could likely find these images. Kogan and MedSpa's use of these hashtags is a deliberate digital marketing and corporate branding choice designed to strengthen their reach to consumers.

45.     Kogan and MedSpa's posts imply without any subtlety that Jackson endorsed MedSpa's business and services. The Original Posts serve as attention-seeking MedSpa advertisements and capitalize on Jackson's fame to do so. Indeed, all of the Original Posts state in the caption that Jackson visited "the number one med spa," promoting their business in the same breath as highlighting that Jackson had been there.

46.     The implication that Jackson himself received plastic surgery from Kogan and MedSpa is even more obvious given that MedSpa has posted photos of other celebrities who were *not* their clients, such as YouTuber Lele Pons and musician Bandman Kevo, and included a disclaimer in the caption stating "*Not our client*".





47.     Indeed, a commentator noted on Kogan's February 3, 2020 post that the Photo implied that Jackson was compensated to take the Photo with Kogan as if he were a paid promoter for MedSpa.



48.      Other commentators expressed the misguided belief that Jackson had undergone plastic surgery. Comments on MedSpa's February 1, 2020, March 11, 2020, February 22, 2021 post under the handle "bh_perfection_medspa" include "👀Was he there for a booty butt lift? 😂", "I'm nosey, what he get?", "Did he Get Lipo?", and "He be getting work done." Kogan and MedSpa did nothing to set the record straight and clarify the implication of their posts. Indeed, in response to comments on the February 22, 2021 post, MedSpa replied with mere emojis.



49.      Jackson never would have consented to Kogan taking a photograph with him had he been informed that Kogan and MedSpa would use the Photo or his name for promotional or commercial purposes. Even if Kogan or MedSpa offered Jackson compensation to use the Photo, he *never* would have promoted Kogan or MedSpa or licensed his image, likeness, or name to them.

50.      In addition to posting the Photo on Kogan and MedSpa's social media, Kogan falsely implied in an article published by the blog DANIEL+LAUREN on May 7, 2022 that Jackson was Kogan and MedSpa's plastic surgery client.[7] Kogan and/or her representatives were

---

[7] *Angela Kogan Celebrates 10 Years of PERFECTION*, DANIEL+LAUREN (May 7, 2022), https://danielpluslauren.com/2022/05/07/angela-kogan-celebrates-10-years-of-perfection/.

directly involved in the drafting and publication of that DANIEL+LAUREN blog post. On May 7, 2022, the day the post was published, a DANIEL+LAUREN representative promised to send Kogan or her representative a rough draft of the post before it was published. Kogan or her representatives provided line edits to the blog post, including changing the title and the text of the post, and DANIEL+LAUREN published the requested edits verbatim, even including typographical errors:



However, Kogan and her representatives never requested that the blog remove the reference to Jackson.

51.     Kogan made similarly misleading statements and again shared the Photo for an article published by the blog The Libra Lounge on August 15, 2022.[8]





52.     Kogan provided information for the article posted to The Libra Lounge and, on information and belief, even paid for the article to be posted. Indeed, on August 13, 2022, Kogan or her representative sent the blog a message asking "Can you throw up that article by Monday"

---

[8] *Angela Kogan: The Magic Behind the FAB Faces of Bay Harbour Perfection*, THE LIBRA LOUNGE (Aug. 15, 2022), https://thelibralounge.blog/2022/08/15/angela-kogan-bay-harbour-perfection/.

and stating "I'm just going to mail you a check." Again, the information provided by Kogan or her representative was published verbatim on the blog:



53.     Kogan also shared the Photo with Ebby Magazine for their article covering Kogan and her business.[9] Prior to publication, Ebby Magazine shared the text of the article with Kogan's talent agent and former patient, Carissa Rossi ("Rossi"), who approved the article, writing "It's perfect—let's go live."

---

[9] *The Face Behind the Face of Perfection*, EBBY MAGAZINE, https://www.ebbymagazine.com/the-face-behind-the-face-of-perfection/ (last visited Sept. 1, 2022).



54.     The Original Posts and Kogan's false statements about Jackson being Kogan and MedSpa's plastic surgery client amount to a violation of Jackson's right to publicity because his image and name were knowingly used *without Jackson's consent* for the commercial and promotional benefit of Kogan and MedSpa.

**The Shade Room Publishes the Article with the Photo, Giving Rise to the False Implication That Jackson Received Sexual Enhancement Surgery from Kogan and MedSpa**

55.     On August 17, 2022, The Shade Room, a popular news and celebrity gossip media outlet centered on the Black community, published an exclusive article titled "Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On It."[10] The Article was available on TSR's website, theshaderoom.com, and its multiple social media platforms, including within the State Florida. (Upon information and belief, TSR has since removed the article from its website.[11])

---

[10] Matthew McNulty, *Penis Enhancements Are More Popular Than Ever & BBLs are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On It (Exclusive)*, THE SHADE ROOM (Aug. 17, 2022), https://theshaderoom.com/plastic-surgery-trends-bbl-angela-kogan-exclusive/.

[11] As of the date of filing, preserved versions of the Article remain viewable via the Internet Archive website at https://web.archive.org/web/20220817210012/ https://theshaderoom.com/plastic-surgery-trends-bbl-angela-kogan-exclusive/.

56.     The Shade Room has a wide reach—it has nearly 30 million followers on Instagram, more than 5.5 million followers on Facebook, and nearly 775,000 followers on Twitter.

57.     The Shade Room's website is organized into categories like "Celebs," "News & Politics," and "Beauty & Style." TSR also organizes articles with "tags," including a "Florida" tag and webpage that include articles with articles focused on Florida events and geared towards a Florida audience.[12] The webpage includes articles with headlines like "Florida Family Seeks Justice After OB-GYN Administers Anesthesia On BBL Patient Who Never Woke Up From Surgery" and "Sheriff: Florida Cop Accidentally Fatally Shoots Best Friend & Fellow Police Officer While Playing Video Games."

58.     The Article on the TSR website was surrounded by paid advertisements next to and below the substance of the Article, as well as internal advertisements promoting other TSR content.

59.     In the Article, immediately following a statement that "[m]ore men are getting plastic surgery (down there) than ever before," TSR reporter Matthew McNulty quoted Kogan as saying that she "has an extensive clientele of celebrities, including … 50 Cent."

60.     In the morning of August 17, 2022, before the Article was published later that day, McNulty met with Kogan and her talent agent Rossi via FaceTime video chat. Immediately thereafter, Rossi provided McNulty with images of Kogan and MedSpa, presumably for use in the Article. Upon information and belief, Kogan and Rossi were located within the State of Florida at the time.

---

[12] *Florida Archives*, THE SHADE ROOM, https://theshaderoom.com/tag/florida/ (last visited Jan. 16, 2023).

61.     After the Article was published, that same afternoon Rossi asked TSR to correct the Article to accurately reflect the number of MedSpa's Instagram followers. TSR made the edit to the Article as requested:



However, Kogan and Rossi did not request that Jackson's name or image be removed. More damning, they did not request that the Article be edited to eliminate the clear but false implication that Jackson had received penile enhancement treatment from Kogan and MedSpa.

62.     On or around August 17, 2022, TSR tweeted a link to the Article on Twitter, which was publicly accessible, including within the State of Florida. The Thumbnail Image used for the

article, which was in plain view in the tweet TSR published,[13] consists of a doctored version of the Photo juxtaposed with a close-up shot of a medical provider presumably performing a penile enhancement procedure on a patient whose face is not visible and whose genitals are obscured by an eggplant emoji. The juxtaposition of the Photo featuring Jackson and Kogan with the picture of the procedure to create the single Thumbnail Image dramatically reinforces the false impression that Jackson had received this sexual enhancement treatment from Kogan and MedSpa.

---

[13] Upon information and belief, TSR first published the Thumbnail Image incorporating Jackson's Photo juxtaposed with that of the patient with the eggplant emoji covering his groin, but later replaced that image with a photo solely of Kogan and the eggplant patient. Although TSR may have made this change, this did not dynamically update the image when it was screengrabbed by Kogan and/or MedSpa, or when it was subsequently reshared on their social medial profiles. In other words, Kogan and or MedSpa continued to disseminate the offensive image of Jackson even after TSR attempted to cover up the misuse of the Jackson Photo. The change of the photo was not completed before users noticed the image of Jackson, with individuals on TSR's Facebook page commenting "I see yall took 50 Cent picture down" and "I just check the one from 17 hours ago. They did in fact edit out 50 cent" and an individual on Twitter posted, "What 50 say to make y'all take his pic down??"



63.     Of course, the Article was false—Jackson had not received sexual enhancement or any other plastic surgery procedures from Kogan or MedSpa. Yet The Shade Room egregiously published what it believed to be Jackson's personal, private medical information for the world to see. (Had the information been accurate, which it was not, the disclosure of such medical information would undoubtedly have been in violation of the Health Insurance Portability and Accountability Act and other laws. In any event, there is no public interest or newsworthiness in Jackson's private medical procedures.)

64.     TSR also posted a link to the Article on its Instagram account, and included in the caption of the Instagram post that "Angela Kogan … has an extensive clientele of celebrities, including 50 Cent …." Comments to the TSR's Instagram post made it clear that viewers believed the Article's false claims that Jackson had received surgical procedures from Kogan or MedSpa, and believed that he had given permission for the use of his name or likeness. One commenter

wrote, "Is it true @50cent?" and underneath that, another wrote "I'm sure they signed a waiver, giving her [Kogan] permission to. She has all of their pics on her page."

65.     The Article itself reads as a long-form advertisement or promotion for Kogan and MedSpa rather than bona fide journalism. The Article is focused almost exclusively on Kogan and her practice at MedSpa. It prominently states that Kogan and MedSpa have numerous celebrity clients but with a specific emphasis on Jackson (whose Photo appears twice despite the fact that he has *never* received plastic surgery from Kogan or MedSpa), and showcases Kogan as the sole interviewee. The reporter quotes her as stating: "At the moment we are seeing a major shift in men getting plastic surgery. Men have really stepped up and are getting way more surgery than we think." This statement is followed immediately by the Photo of Jackson with Kogan.




66.     Upon information and belief, the TSR Article was a promotional exercise engineered by Rossi, who introduced Kogan to representatives of TSR for the purpose of promoting Kogan and MedSpa's business. According to her Instagram bio, Rossi "[c]onnect[s] talent and companies with partnerships that are true to their personal brand." Kogan thanked TSR and Rossi in the caption of her August 17, 2022 Instagram post. Upon information and belief, Rossi is a Florida resident and her efforts to engineer of the Article were performed from within the State of Florida.

67.     The fact that the Article is a promotional piece rather than journalism is reinforced by the fact that Kogan and MedSpa's own Instagram posts, rather than images such as stock photos, are displayed throughout the body of the Article. A person reading the Article has the ability to click the Instagram links in the Article to be brought directly to MedSpa's various Instagram accounts. The Instagram posts throughout the Article also show the full captions associated with each post. These captions include MedSpa's phone number, statements entreating the viewer to call for a free consultation, and offers of promotional discounts on cosmetic surgeries and procedures. The use of Kogan and MedSpa's Instagram posts throughout further establish that the Article itself serves a commercial and advertising purpose for Kogan and MedSpa.

68.     Additionally, the article concludes with one last promotional push: "Those interested in a consult with Dr. Kogan, the 'first and only plastic surgery in Sunny Isles,' can do so by filling out a form here."[14]

69.     Upon information and belief, the promotional effort was successful. For example, on a link to the Article posted to TSR's Facebook page on or about August 18, 2022, one commenter wrote: "Consultation appointment made! 💪"

---

[14] The word "here" is hyperlinked to this form: https://form.jotform.com/221035080660141.

70.     In their pleadings in response to the original Complaint filed in this action and in a sworn declaration filed in connection with the motion to dismiss, Kogan and MedSpa claim that they did not provide TSR with photos of Jackson or create the Thumbnail Image, and that TSR created the Thumbnail Image and "pulled the Photo from Kogan's social media without Kogan's permission or consent."

71.     After the Article was published on August 17, 2022, Kogan posted a video to her public Instagram account that scrolled through the Article. The video begins with a lingering still shot of the Thumbnail Image. The Thumbnail Image, as the first graphic that appears in the video, is the image that is visible from the grid view of Kogan's profile.[15] Upon information and belief, Kogan accessed the Article, recorded herself scrolling through the Article, and posted the recording from within the State of Florida.

72.     As she did previously with the Original Posts, Kogan included several high visibility hashtags in her post captions, such as #plasticsurgery, #theshaderoom, #celebrity, and #penis, clearly with the intention of gaining traction for the post and, by extension, for Kogan and her business.

73.     On the same day, MedSpa acted in lockstep with Kogan, posting the same video with a substantially similar caption, which included even more hashtags than Kogan had in her post. Upon information and belief, MedSpa's post of the Article was from within the State of Florida.

---

[15] By using the Thumbnail Image as the primary asset on their posts after August 17, 2022, Defendants are intentionally directing viewers to read the Article. Thumbnail images are often hyperlinked to the article in question, sending the viewer directly to the article in question. At a minimum, if a thumbnail image is not hyperlinked, the viewer is indirectly encouraged to seek out the article.

74.     As of September 16, 2022—the date the original Complaint in this action was filed—Kogan and MedSpa's Instagram posts showing the Thumbnail Image incorporating the Jackson Photo were still live on their profiles.

75.     The Article was extremely popular. On August 18, 2022, the day after its publication, McNulty sent a message to Kogan and Rossi stating "It's still #2 on our website second day in a row." Upon information and belief, without the use of Jackson's name or image—never mind the lurid innuendo that Jackson had received penile enhancement treatment—the Article would have been significantly less popular, and therefore less lucrative for TSR's advertising revenue.

76.     On August 19, 2022, two days after the Article was published, The Breakfast Club—a popular syndicated radio show—discussed the Article in a segment called "Would You Get The 'Daddy-Do-Over' Procedure?" The radio hosts made specific reference to the Article, stating that "penis enhancements are more popular than ever" and "BBLs are dying out" (direct quotes from the title of the Article) and referenced "recent trends in plastic surgery according to Angela Kogan." The hosts continued to discuss penile enhancement procedures.[16]

77.     Upon information and belief, McNulty requested that The Breakfast Club add a link to the Article into the description of a YouTube recording of the radio segment. Indeed, the description of the segment links to the Article:[17]

---

[16] Breakfast Club Power 105.1 FM, *The Breakfast Club FULL SHOW: 8-19-2022* (Aug. 19, 2022), https://www.youtube.com/watch?v=J-I8KGLHgMc.

[17] Breakfast Club Power 105.1 FM, *Would You Get The "Daddy-Do-Over" Procedure?* (Aug. 19, 2022), https://www.youtube.com/watch?v=r1bmNzuLE3g.



Afterwards, McNulty sent a message to Kogan and Rossi noting that the link was added to the video, and thanking Kogan and Rossi "for the opportunity":



**Reception to the Article Featuring Jackson's Photo and the Thumbnail Image**

78.     Since TSR published the Article and the Defendants began posting the Thumbnail Image to their social media accounts, Jackson has been subjected to lewd, lascivious, and sexually objectifying comments from members of the public who wrongly believed that Jackson had undergone a penile enhancement procedure and that he endorsed Kogan and MedSpa.

Additionally, other media outlets and publications have subsequently reshared the contents of the original TSR Article and the Photo.

79.     As the result of Kogan and MedSpa's misappropriation of Jackson's name and image and TSR's defamatory Article, commentators on Defendants' posts have amplified the impression that Jackson endorsed Kogan and MedSpa and that he himself had undergone a penile enhancement procedure. On MedSpa's August 17, 2022 post under the handle "bh_perfection_medspa," one commentator crudely posted "Call him 50 inch 😂." On the same post, another commentator posted "@50cent Can I see the before and after pics?" Similar comments can be found on Kogan's August 17, 2022 post, such as: "Did 50 see this I don't think he gone like that 😂", "Wait so 50 got his 🫤 done or what?", "Why they got 50 cent up there talking bout 🍆 enlargement 😂", "@_cuban_link what work did @50cent get?? @angela_mk".[18,][19] Another comment from a user with the handle "miamitip305" stated, "I wanna see some pics of the enlargements." Given that these posts were publicly available as of the filing of the original Complaint in this action, the posts continued to mislead consumers and bring Jackson's name into disrepute.

80.     Defendants, when sharing Jackson's image in association with a sexual enhancement procedure, should have known that this could lead to vulgar and sexually charged comments about Jackson and his body, particularly in light of the ways that Black men in U.S.

---

[18] The @ symbol before an Instagram user's handle creates a direct hyperlink to that specific user's account. Using the @ symbol to generate this hyperlink to an individual's account is referred to as "tagging." Additionally, depending on a user's personalized settings, the person being tagged will typically receive a notification that they were tagged in a comment.

[19] The Instagram handle "_cuban_link" belongs to Jamira Haines, a/k/a Cuban Link, who is Jackson's girlfriend. The Instagram handle "50cent" belongs to Jackson.

history have been, and continue to be, sexualized and fetishized. These attitudes and stereotypes are extremely apparent when reading the comments on Defendants' posts.

81.     Additionally, several other pop culture outlets have published substantially similar articles as TSR's Article, including the Photo and/or the Thumbnail Image, as well as the false assertion that Jackson is one of Kogan's plastic surgery patients.[20]

82.     For example, one website (which is still accessible as of the filing of this Amended Complaint) substantially reposted the Article's content the same day the Article was published, including the Thumbnail Image immediately under the headline "More Men Getting Work (Down There) According To Med Spa CEO" and directly above a description of Jackson as a MedSpa client:[21]

---

[20] Zack Zwiezen, *According to Med Spa CEO, more men are finding work (below)*, The Hiu (Aug. 18, 2022), https://thehiu.com/according-to-med-spa-ceo-more-men-are-finding-work-below/; *Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On it (Exclusive)*, News WWC (August 18, 2022), https://www.newswwc.com/entertainment/celebrity-news/penis-enhancements-are-more-popular-than-ever-bbls-are-dying-out-cosmetic-surgery-ceo-angela-kogan-speaks-on-it-exclusive/; *Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On it (Exclusive)*, Star News (Aug. 18, 2022), https://www.starsnews.co/19956773/penis-enhancements-are-more-popular-than-ever-amp-bbls-are-dying-out-cosmetic-surgery-ceo-angela-kogan-speaks-on-it-exclusive#/.

[21] *More Men Getting Work (Down There) According To Med Spa CEO*, Ghanamma.com (Aug. 17, 2022), https://www.ghanamma.com/gp/2022/08/17/more-men-getting-work-down-there-according-to-med-spa-ceo/.



83.     Kogan's talent agent Rossi also posted the Thumbnail Image and another post about the Article to her professional Instagram account under the handle "crossientertainment," and tagged Instagram accounts for TSR, McNulty, and MedSpa. Upon information and belief, Rossi made these posts from Florida.

84.     Kogan and MedSpa's self-promotion through the use of Jackson's name and image, as well as amplifying the false insinuation to media outlets that Jackson is a plastic surgery client, amounts to an egregious violation Jackson's right to publicity, false endorsement, false advertising, conversion, and unjust enrichment. Kogan and MedSpa did so to benefit themselves financially and in the face of their audience at the expense of Jackson's reputation and dignity.

85.     The Shade Room's defamatory statements and use of Jackson's image to falsely state or imply that he had received sexual enhancement procedures from Kogan or MedSpa was a

shameless attempt by a tabloid to exploit a celebrity's private medical information (albeit false information) for clout, clicks, and advertising revenue.

**COUNT I**
**(RIGHT OF PUBLICITY – UNAUTHORIZED MISAPPROPRIATION OF NAME/LIKENESS PURSUANT TO FLA. STAT. § 540.08 AGAINST KOGAN AND MEDSPA)**

86.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

87.     On or around February 1, 2020, Jackson agreed to take a photograph with Kogan under the sole impression that Kogan was a fan seeking the photograph for her private and personal enjoyment.

88.     Between February 1, 2020 through August 17, 2022, Kogan and MedSpa shared the Photo to their social media accounts on numerous occasions for purposes of advertising and self-promotion.

89.     Additionally, Kogan falsely implied in multiple online publications that Jackson was her client for plastic surgery procedures and/or shared the Photo with publications writing about Kogan and MedSpa's business.

90.     Kogan also misappropriated Jackson's image and name when she falsely implied in the TSR article that Jackson received plastic surgery procedures (including penile enhancement) from Kogan and MedSpa, when she permitted TSR's use and publication of the Photo, and when she and MedSpa repeatedly shared the doctored Thumbnail Image incorporating the Photo on their social media accounts.

91.     These posts have fueled the misconception that Jackson endorses Kogan and MedSpa's business, that Jackson was or is Kogan and MedSpa's client for plastic surgery procedures, and that Jackson obtained a penile enhancement procedure from Kogan and MedSpa.

Kogan and MedSpa knew that Jackson never received plastic surgery from them, yet they proceeded to imply to TSR and other media outlets that he had.

92.     Jackson has received no payment, royalties, or any other economic or social benefit from Kogan and MedSpa's use of his name or image.

93.     At no time did Jackson ever consent to Kogan or MedSpa use of the Photo in an any type of advertising or promotional manner. Kogan and MedSpa have been the sole beneficiaries of misappropriating Jackson's name and image.

94.     Kogan and MedSpa's actions have caused Jackson reputational harm and have subjected him to lewd, invasive, and objectifying public commentary, and have stripped Jackson of his right to control when, how, and to whom he permits his name and image to be utilized.

95.     As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, irreparable harm for which monetary damages will be inadequate and thus is entitled to appropriate injunctive relief.

96.     Alternatively, Plaintiff has suffered, and continues to suffer, substantial damages from the loss of his right to publicity, and, accordingly, Plaintiff is entitled to damages in an amount to be determined at trial.

## COUNT II
### (COMMON LAW INVASION OF PRIVACY AGAINST KOGAN AND MEDSPA)

97.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

98.     On or around February 1, 2020, Jackson agreed to take a photograph with Kogan under the sole impression that Kogan was a fan seeking the photograph for her private and personal enjoyment.

99.    Between February 1, 2020 through August 17, 2022, Kogan and MedSpa shared the Photo to their social media accounts on numerous occasions for purposes of advertising and self-promotion.

100.    Additionally, Kogan falsely implied in multiple online publications that Jackson was her client for plastic surgery procedures and/or shared the Photo with publications writing about Kogan and MedSpa's business.

101.    Kogan also misappropriated Jackson's image and name when she falsely implied in the TSR article that Jackson received plastic surgery procedures (including penile enhancement) from Kogan and MedSpa, when she permitted TSR's use and publication of the Photo, and when she and MedSpa repeatedly shared the doctored Thumbnail Image incorporating the Photo on their social media accounts.

102.    These posts have fueled the misconception that Jackson endorses Kogan and MedSpa's business, that Jackson was or is Kogan and MedSpa's plastic surgery client, and that Jackson obtained a penile enhancement procedure from Kogan and MedSpa. Kogan and MedSpa knew that Jackson never received plastic surgery from them, yet they proceeded to imply to TSR and other media outlets that he had.

103.    Jackson has received no payment, royalties, or any other economic or social benefit from Kogan or MedSpa use of his name or image.

104.    At no time did Jackson ever consent to Kogan or MedSpa's use of the Photo in an any type of advertising or promotional manner. Kogan and MedSpa have been the sole beneficiaries of misappropriating Jackson's name and image.

105.    Kogan and MedSpa's actions have caused Jackson reputational harm and have subjected him to lewd, invasive, and objectifying public commentary, and have stripped Jackson of his right to control when, how, and to whom he permits his name and image to be utilized.

106.    As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer irreparable harm for which monetary damages will be inadequate and thus is entitled to appropriate injunctive relief.

107.    Alternatively, Plaintiff has suffered, and continues to suffer, substantial damages from the invasion of his right to privacy, and, accordingly, Plaintiff is entitled to damages in an amount to be determined at trial.

## COUNT III
### (VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a): FALSE ENDORSEMENT AGAINST KOGAN AND MEDSPA)

108.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

109.    Kogan and MedSpa have misleadingly used Jackson's name and image in violation of the Lanham Act, 15. U.S.C. § 1125(a) to create and establish the false impression that Jackson endorsed, approved, or sponsored Kogan and MedSpa's business in an effort to generate revenue for Kogan and MedSpa's company and/or to give themselves an overall commercial benefit.

110.    Kogan and MedSpa did so on countless occasions, including: when they repeatedly posted the Photo of Jackson on social media; when Kogan falsely implied in several online publications that Jackson was Kogan and MedSpa's plastic surgery client and/or shared the Photo with such publications; when Kogan and MedSpa misappropriated Jackson's name and image for use in the TSR article; and when they shared on social media the Article, the Thumbnail Image,

and a screenshot repeating the false insinuation that Jackson was a client for plastic surgery and penile enhancement treatment.

111.    Jackson never consented to his name and image being used in any way to endorse or sponsor Kogan, MedSpa, and/or their goods and services.

112.    Jackson never signed a contract or made an oral agreement to endorse or sponsor Kogan or MedSpa, and therefore Kogan and MedSpa were aware that Jackson had made no formal or informal endorsement, sponsorship, or approval of them and their business.

113.    Kogan and MedSpa's actions have already and continue to deceive consumers into the belief that Jackson was a plastic surgery patient and endorsed, approved, and/or sponsored Kogan and MedSpa's goods and services.

114.    Kogan, as the owner and an officer of MedSpa, participated in the decision to engage in infringing acts or caused the infringement to occur because she had the Photo taken, she caused or permitted MedSpa to use the Photo on its social media accounts, she supplied the Photo to the various online publications, and she herself made statements to the TSR reporter implying that Jackson was Kogan and MedSpa's client for plastic surgery and penile enhancement procedures.

115.    Kogan and MedSpa's actions have caused irreparable harm to Jackson's reputation and brand by falsely claiming that Jackson endorsed, approved of, or sponsored Kogan and MedSpa and their business, and specifically that he endorsed their plastic surgery or penile enhancement procedures as a result of having been Kogan and MedSpa's client for such procedures. No monetary relief will adequately compensate Plaintiff for such irreparable harm and thus he is entitled to appropriate injunctive relief.

116.    Alternatively, as a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from Kogan and MedSpa's false endorsement and, accordingly, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, statutory trebling of damages, disgorgement of profits earned directly or indirectly by Kogan and MedSpa's unlawful endorsement, attorneys' fees and costs, the destruction of the false endorsements, and/or any other relief that is just and proper.

**COUNT IV**
**(VIOLATION OF THE LANHAM ACT, 15 U.S.C. § 1125(a): FALSE ADVERTISING AGAINST KOGAN AND MEDSPA)**

117.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

118.    Kogan and MedSpa's actions described herein constitute false advertisement in violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125, *et seq.*

119.    Kogan and MedSpa misleadingly used Jackson's name and image, without Jackson's consent, to create the false perception that Jackson was a plastic surgery client of Kogan and MedSpa and that Jackson endorsed their business.

120.    Kogan and MedSpa used Plaintiff's name and image to establish a false endorsement of their company on countless occasions, including: when they repeatedly posted the Photo of Jackson on social media; when Kogan falsely implied in several online publications that Jackson was Kogan and MedSpa's plastic surgery client and/or shared the Photo with such publications; when Kogan and MedSpa misappropriated Jackson's name and image for use in the TSR article; and when they shared on social media the Article, the Thumbnail Image, and a screenshot repeating the false insinuation that Jackson was a client for plastic surgery and penile enhancement treatment.

121.    Kogan and MedSpa's actions have already deceived and continue to deceive consumers into the belief that Jackson himself received plastic surgery and sexual enhancement procedures from Kogan and MedSpa.

122.    Kogan and MedSpa were aware that their insinuation that Jackson was a plastic surgery patient was false because they as health care providers are in the position to know who has and has not received their services based on their records and other forms of documentation. In doing so, they used Jackson's name, image, and likeness as false advertising for their business.

123.    Kogan and MedSpa have used Jackson's name and image in interstate commerce by posting advertising social media content that is accessible to anyone across the country, and because MedSpa has locations both in Las Vegas and in Florida.

124.    Kogan and MedSpa's use of Jackson's name and image is used to attract consumers to obtains goods and services from Kogan and MedSpa, which has a direct and indirect effect on their revenue.

125.    Kogan and MedSpa's actions have caused irreparable harm to Jackson's reputation and brand by associating him with Kogan and MedSpa, Kogan and MedSpa's line of business in the plastic surgery industry, and with specifically having had sexual enhancement procedures. No monetary relief will adequately compensate Plaintiff for such irreparable harm and thus he is entitled to appropriate injunctive relief.

126.    Alternatively, as a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from Kogan and MedSpa's false advertising and, accordingly, Plaintiff is entitled to compensatory damages in an amount to be determined at trial, statutory trebling of damages, disgorgement of profits earned directly or indirectly by Kogan

and MedSpa's unlawful false advertising, attorneys' fees and costs, the destruction of the false advertisements, and/or any relief that is just and proper.

## COUNT V
### (CONVERSION AGAINST KOGAN AND MEDSPA)

127.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

128.   Jackson is, and at all relevant times was, the exclusive owner of all rights, title, and interest to his image, likeness, and/or identity. Jackson has an intangible property interest in his name, image, and likeness.

129.   Kogan and MedSpa converted Jackson's property rights over his name and image when they used said intangible property for their own advertising and financial gain without Jackson's consent.

130.   As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from Kogan and MedSpa's conversion of his property rights, and, accordingly, Plaintiff is entitled to all remedies available under the common law claim for conversion, including but not limited to actual damages, costs, interest, and restitution of Kogan and MedSpa's unlawful proceeds, and/or other relief deemed just and proper.

## COUNT VI
### (UNJUST ENRICHMENT AGAINST KOGAN AND MEDSPA)

131.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

132.   Jackson's name, image, and likeness bear substantial monetary value.

133.     Kogan and MedSpa were and continue to be aware that Jackson's name and image bear substantial monetary value, and that the use of his name and image for their own goods and services could lead to a financial and commercial benefit for themselves.

134.     Jackson conferred a benefit upon Kogan and MedSpa by voluntarily taking the Photo with Kogan. Jackson was unaware that this Photo would be used as advertising to the commercial benefit of Kogan and MedSpa. Jackson never consented to Kogan and MedSpa's use of the Photo in this capacity.

135.     Kogan and MedSpa used Jackson's name and image to obtain a financial and commercial benefit when they shared the Photo repeatedly on social media and when they falsely insinuated that Jackson was a plastic surgery patient.

136.     Kogan and MedSpa have retained profits and other benefits conferred upon them by using Jackson's image and name to promote and advertise Kogan and MedSpa's business.

137.     It would be inequitable for Kogan and MedSpa to retain the benefits conferred upon them by using Jackson's image and name without paying fair value for the image.

138.     As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from Kogan and MedSpa's unjust enrichment at Plaintiff's expense, and, accordingly, Plaintiff is entitled to all remedies available under the common law claim for unjust enrichment, including but not limited to actual damages, costs, interest, restitution of unlawful proceeds, and/or other relief deemed just and proper.

**COUNT VII**
**(DEFAMATION PER SE AGAINST THE SHADE ROOM)**

139.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

140.    In the Article published on or about August 17, 2022 titled "Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On It," TSR falsely stated that Jackson received plastic surgery or medical procedures from Kogan and/or MedSpa, and falsely stated that Jackson received a penile enhancement procedure, both through use of Jackson's name and by the intentional juxtaposition of his image with discussion or photographs of penile enhancement surgery.

141.    These statements, even if true (which they were not) are not newsworthy or matters of public concern, and in fact are an attempt by TSR to unlawfully publish an individual's private medical information.

142.    The statements in the Article were published to TSR's website, theshaderoom.com, among other locations, and the Article was accessible publicly and was viewed by readers across the country, including within the State of Florida.

143.    The false statements in the Article were made intentionally, despite knowledge of their falsity, or with recklessly disregard as to the truth of the statements, including for the specific purposes of increasing views of the Article, increasing traffic to the TSR website, and increasing the advertising revenue received by TSR from advertisements placed alongside the Article.

144.    Upon information and belief, TSR failed to fact-check the Article's false claims that Jackson had received plastic surgery and/or penile enhancement surgery from Kogan or MedSpa, and in fact had neither seen nor sought any evidence of such procedures whatsoever. Indeed, if Jackson had received plastic surgery from Kogan or MedSpa (which he did not), the disclosure of such private medical information to TSR (or anyone else) would have been highly inappropriate.

145.     The statements in the Article were defamatory per se because they subjected Jackson to ridicule, contempt, and disgrace by falsely stating that Jackson had received a penile enhancement procedure.

146.     As a result of the defamatory statements, Jackson was damaged both personally and professionally. Jackson's career as a rap artist, celebrity, and entrepreneur is based in large part on his valuable reputation, public image, and good will. That reputation, image, and good will were damaged by the defamatory statements, and the publication of these defamatory statements lowered Jackson in the estimation of the community.

147.     Following TSR's publication of the Article, the Article's defamatory statements have been repeated by many others on social media and on other websites and the false statements continue to be repeated and republished, further perpetuating the harm to Jackson.

148.     As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from TSR's defamation per se, and, accordingly, Plaintiff is entitled to compensatory damages, including but not limited to general damages and special damages, injunctive relief, as well as any other relief deemed just and proper.

149.     Jackson provided written notice to TSR of his intent to file defamation claims and identifying the Article and statements therein alleged to be false and defamatory at least five days before instituting such action as required by Florida Statute § 770.01. To date, TSR has not issued a retraction, correction, or apology.

**COUNT VIII**
**(DEFAMATION PER QUOD AGAINST THE SHADE ROOM)**
**(IN THE ALTERNATIVE)**

150.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

151.    In the Article published by TSR on or about August 17, 2022 titled "Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan Speaks On It," TSR falsely stated that Jackson received plastic surgery or medical procedures from Kogan and/or MedSpa and falsely stated that Jackson received a penile enhancement procedure, both through use of Jackson's name and by the intentional juxtaposition of his image with discussion or photographs of penile enhancement surgery.

152.    These statements, even if true (which they were not) are not newsworthy or matters of public concern, and in fact are TSR's attempt to unlawfully publish an individual's private medical information.

153.    The statements in the Article were published to the TSR's website, theshaderoom.com, among other locations, and the Article was accessible publicly and was viewed by readers across the country, including within the State of Florida.

154.    The misleading and/or false statements in the Article were made intentionally, despite knowledge of their falsity, or with recklessly disregard as to the truth of the statements, including for the specific purpose of increasing views of the Article, increasing traffic to the TSR website, and increasing the advertising revenue received by TSR from advertisements placed alongside the Article.

155.    Upon information and belief, TSR failed to fact-check the Article's false claims that Jackson had received plastic surgery and/or penile enhancement surgery from Kogan or MedSpa, and in fact neither seen nor sought any evidence of such procedures whatsoever. Indeed, if Jackson had received plastic surgery from Kogan or MedSpa (which he did not), the disclosure of such private medical information to TSR (or anyone else) would have been highly inappropriate.

156.    As a result of the defamatory statements, Jackson was damaged both personally and professionally. Jackson's career as a rap artist, celebrity, and entrepreneur is based in large part on his valuable reputation, public image, and good will. That reputation, public image, and good will were damaged by the defamatory statements, and the publication of the defamatory statements lowered Jackson in the estimation of the community and exposed him to substantial ridicule, contempt, and disgrace.

157.    Following TSR's publication of the Article, the Article's defamatory statements have been repeated by many others on social media and on other websites and the false statements continue to be repeated and republished, further perpetuating the harm to Jackson.

158.    As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from TSR's defamation per quod, and, accordingly, Plaintiff is entitled to compensatory damages, including but not limited to general damages and special damages, injunctive relief, as well as any other relief deemed just and proper.

159.    Jackson provided written notice to TSR of his intent to file defamation claims and identifying the Article and statements therein alleged to be false and defamatory at least five days before instituting such action as required by Florida Statute § 770.01. To date, TSR has not issued a retraction, correction, or apology.

## COUNT IX
### (DEFAMATION BY IMPLICATION AGAINST THE SHADE ROOM)
### (IN THE ALTERNATIVE)

160.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 85 above as if fully set forth herein.

161.    In the Article published on or about August 17, 2022 titled "Penis Enhancements Are More Popular Than Ever & BBLs Are Dying Out: Cosmetic Surgery CEO Angela Kogan

Speaks On It," TSR stated that Jackson was part of Kogan and MedSpa's "clientele" and juxtaposed images of Jackson with discussions and images of penile enhancement surgeries.

162.    To the extent that the statements in the Article are considered true, the Article is defamatory by implication because it creates the false impression that Jackson received penile enhancement treatment or other plastic surgery from Kogan or MedSpa. In fact, Jackson has never received surgery of any kind from Kogan or MedSpa. This false impression is created by the juxtaposition of Jackson's name and image with discussions and images of penile enhancement surgeries, and the omission of the fact that Jackson never received penile enhancement surgery and that he never received plastic surgery of any kind from Kogan or MedSpa.

163.    These false impressions, even if true (which they were not) are not newsworthy or matters of public concern, and in fact are TSR's attempt to unlawfully publish an individual's private medical information.

164.    A reasonable reader of the Article would understand the Article to imply that Jackson had received penile enhancement surgery and/or plastic surgery from Kogan and MedSpa. Indeed, numerous comments on social media make clear that many readers thought exactly that.

165.    TSR created this false impression by intentionally placing images of Jackson next to discussions or images of penile enhancement procedures. For example, according to Kogan and MedSpa, TSR created and published the Thumbnail Image, which combined the Photo of Jackson with an image of a faceless male obtaining a penile enhancement procedure, with a euphemistic eggplant emoji covering his exposed groin area. Indeed, Kogan and MedSpa have claimed that TSR "pulled the Photo from Kogan's social media without Kogan's permission or consent."

166.    TSR intentionally created this false impression despite knowing that the Article was likely to mislead reasonable readers into believing that Jackson had received a penile enhancement

procedure or that he had received surgical procedures from Kogan or MedSpa, or, alternatively, TSR acted with reckless disregard to the likelihood that the Article would create such false impressions. TSR's intentional creation of the false impressions, or its reckless disregard for the likelihood of such false impressions, were for the specific purposes of increasing views of the Article, increasing traffic to the TSR website, and increasing the advertising revenue received by TSR from advertisements placed alongside the Article.

167.    Upon information and belief, TSR failed to fact-check the Article's false insinuation that Jackson had received plastic surgery and/or penile enhancement surgery from Kogan or MedSpa, and in fact had neither seen nor sought any evidence of such procedures whatsoever. Indeed, if Jackson had received plastic surgery from Kogan or MedSpa (which he did not), the disclosure of such private medical information to TSR (or anyone else) would have been highly inappropriate.

168.    The statements in the Article were published to the TSR's website, theshaderoom.com, among other locations, and the Article was accessible publicly and was viewed by readers across the country, including within the State of Florida.

169.    As a result of the false impressions created by the Article, Jackson was damaged both personally and professionally. Jackson's career as a rap artist, celebrity, and entrepreneur is based in large part on his valuable reputation, public image, and good will. That reputation, public image, and good will were damaged by the defamatory statements, and the publication of the defamatory statements lowered Jackson in the estimation of the community.

170.    Following TSR's publication of the Article, the Article's false impressions have been repeated by many others on social media and on other websites, and the false impressions continue to be repeated and republished, further perpetuating the harm to Jackson.

45

171.     As a direct and proximate cause of the foregoing, Plaintiff has suffered, and continues to suffer, substantial damages from TSR's defamation by implication, and, accordingly, Plaintiff is entitled to compensatory damages, including but not limited to general damages and special damages, injunctive relief, as well as any other relief deemed just and proper.

172.     Jackson provided written notice to TSR of his intent to file defamation claims and identifying the Article and statements therein alleged to be false and defamatory at least five days before instituting such action as required by Florida Statute § 770.01. To date, TSR has not issued a retraction, correction, or apology.

### KOGAN AND MEDSPA'S CONDUCT WARRANTS PUNITIVE DAMAGES

173.     Kogan and MedSpa's conduct warrants the imposition of punitive damages. The factors justifying punitive damages include, at a minimum, the following:

a.     Kogan and MedSpa knew that they did not have Jackson's permission to use his name and image;

b.     Kogan and MedSpa's disregard for Jackson's right to publicity and to use his name and image as he chooses was intentional, wanton, and malicious.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Curtis J. Jackson, III respectfully requests that the Court enter an order and judgment in favor of him against Defendants Angela Kogan, Perfection Plastic Surgery, Inc, and The Shade Room, LLC, containing the following relief:

a.     Preliminarily and permanently enjoining Kogan and MedSpa from falsely stating that Jackson is their client, sharing the Photo of Jackson with Kogan in connection with any and all plastic surgery and sexual enhancement procedures, sharing the Photo of Jackson with Kogan on any and all social media profiles and with any and

all media outlets, and engaging in any further actions that could allow a reasonable person to construe Jackson as endorsing, partnering with, or supporting Kogan and MedSpa;

b.  Awarding Plaintiff damages against Kogan and MedSpa, in an amount to be proven at trial, to compensate him for harm to the commercial value of his image and name, for loss of royalties, and professional and personal reputational harm;

c.  Awarding Plaintiff treble damages against Kogan and MedSpa for their violations of the Lanham Act, based on trebling of actual damages in an amount to be proven at trial;

d.  Awarding Plaintiff punitive and exemplary damages against Kogan and MedSpa in an amount to be proven at trial;

e.  Any and all remedies available under 15 U.S.C. § 1125 against Kogan and MedSpa, including: disgorgement of any profits made by Kogan and MedSpa, directly or indirectly, arising from the unauthorized use of Jackson's name and image; compensatory damages in an amount to be determined at trial; and the destruction of all copies in any media of the infringing images;

f.  Awarding Plaintiff compensatory damages against TSR, including general damages and special damages;

g.  Preliminarily and permanently enjoining TSR from falsely stating or implying that Jackson received a penile enhancement procedure or that Jackson received surgical procedures from Kogan or MedSpa;

h.  Issuing an Order requiring TSR to retract the Article to the extent it falsely stated or implied that Jackson received a penile enhancement procedure or that Jackson

received surgical procedures from Kogan or MedSpa, and requiring TSR to publicly issue an apology to Jackson;

i.  Awarding Plaintiff interest in any amount according to law;

j.  Awarding Plaintiff reasonable attorneys' fees and costs as allowed by law, including pursuant to the Lanham Act; and

k.  Granting Plaintiff such and other further relief at law or in equity as the Court deems just and proper.

## **DEMAND FOR TRIAL BY JURY**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff Curtis J. Jackson, III hereby demands a trial by jury in this action on all claims so triable.

Dated:  January 16, 2023

Respectfully submitted,

**AKERMAN LLP**

*/s/ Eamon O'Kelly*
Joseph Rebak, Esq.
Florida Bar No. 308668
Alejandro J. Paz, Esq.
Florida Bar No. 1011728

**AKERMAN LLP**
Three Brickell City Centre
98 Southeast Seventh Street, Suite 1100
Miami, Florida 33131
(305) 374-5600 Telephone
(305) 374-5095 Facsimile
joseph.rebak@akerman.com
alejandro.paz@akerman.com

Craig Weiner (*pro hac vice*)
Eamon O'Kelly (*pro hac vice*)
Reena Jain (*pro hac vice*)
1251 Avenue of the Americas, 37th Floor
New York, New York 10020
Tel.: (212) 880-3800
Fax: (212) 880-8965
craig.weiner@akerman.com
eamon.okelly@akerman.com
reena.jain@akerman.com

*Attorneys for Plaintiff Curtis Jackson, III p/k/a
50 Cent*

### CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of January, 2023, a true and correct copy of the foregoing First Amended Complaint was served via the Court's CM/ECF System upon all counsel of record.

*/s/ Alejandro J. Paz*
Alejandro J. Paz
